Harry B. Frank, J.
The plaintiffs herein bring this action as members of the Police Department and taxpayers of the City of New York on behalf of themselves and all members of the Police Department of the City of New York similarly situated. The relief sought in the action is (1) a declaratory judgment to the effect that Executive Order No. 11 promulgated by the Mayor of the City of New York (appointing a commission to investigate allegations of police corruption) and Local Law No. 13 of 1970, enacted by the City Council (to amend the Administrative Code of the city in relation to the powers of said commission) are illegal and invalid, and (2) a permanent injunction restraining defendants Knapp, Bauman, Monserrat, Thomas and Vance (appointed as members of the commission), and other persons acting on their behalf, from conducting any inquiry or investigation, or otherwise exercising any power pursuant to said Executive Order and Local Law.
In the instant proceeding, plaintiffs are seeking a temporary injunction pending the determination of this action, while respondents are cross-moving for summary judgment on the ground that there are no triable issues and that they are entitled to judgment as a matter of law, denying the relief sought and *618 declaring the Executive Order and Local Law are valid in all respects.
The text of the disputed Executive Order, which was issued on May 21, 1970 is as follows :
OFFICE OF THE MAYOR
EXECUTIVE ORDER NO. 11
MAY 21, 1970
APPOINTING A COMMISSION TO INVESTIGATE ALLEGATIONS OF POLICE CORRUPTION AND THE CITY’S ANTI-CORRUPTION PROCEDURES
Section 1. Pursuant to the Authority vested in the Mayor, I hereby appoint a Commission to (1) investigate the extent of alleged police corruption in the City and any relationship of such alleged corruption to crime and law enforcement; (2) inquire into and evaluate the existing procedures for investigating specific allegations of corruption and present practices designed to prevent corruption and ascertain whether these procedures provide the public with adequate assurance that charges of police corruption are dealt with vigorously, promptly and fairly; (3) recommend improvements in these procedures, additional steps to provide stronger safeguards against corruption, and any improvements in methods of law enforcement which will tend to eliminate police corruption; (4) take evidence and hold whatever hearings, public and private, the Commission may deem appropriate to ascertain the necessary facts.
§ 2. The Commission shall consist of the following persons who are hereby appointed as members thereof:
Whitman Knapp, Chairman
Arnold Bauman
Joseph Monserrat
Franklin A. Thomas
Cyrus R. Vance
§ 3. The Commission is empowered to prescribe its own procedures and to employ such assistants as it deems necessary, within the amounts appropriated therefor.
§ 4. All departments and agencies of the City are directed to furnish the Commission with such facilities, services and cooperation as it may request from time to time.
§ 5. This order shall take effect immediately.
The Local Law, which was adopted on May 27, 1970, provides as follows:
A LOCAL LAW
To amend the administrative code of the city of New York, in relation to the powers of the commission appointed by the mayor to investigate allegations of police corruption and the city’s anti-corruption procedures.
Be it enacted by the Council as follows :
Section 1. Article one of title F of chapter fifty-one of the administrative code of the city of New York is hereby amended by adding thereto a new section, to be section F51-9.0, to follow section F51-8.0, to read as follows:
Section F51-9.0 Commission appointed by the mayor to investigate allegations of police corruption and the city’s anti-corruption procedures; additional *619 powers.— The commission established by the executive order of the mayor number eleven, dated May 21, nineteen hundred seventy, to investigate allegations of police corruption and the city’s anti-corruption procedures, or any member of it designated in writing by the chairman, shall have the powers and duties set forth in such executive order, and, in addition thereto, for the purpose of carrying out such powers and duties, such commission, or a subcommittee thereof, shall have power to administer oaths or affirmations, to hold hearings either public or private, require and enforce by subpoena the attendance and take testimony under oath of such persons as it deems necessary, and require and enforce by subpoena duces tecum the production of books, accounts, papers, and other evidence relevant to the subject or subjects of its investigation or inquiry.
Section 2. This local law shall take effect immediately and shall cease to be of any force or effect December thirty-first, nineteen hundred seventy.
Plaintiffs contend that the Executive Order and Local Law are violative of section 440 of the City Charter relating to “ civilian complaints against members of the police department ” which was added to the charter after approval by the electorate upon a referendum held in November, 1966. It is further contended that said Executive Order and Local Law are, in any event, invalid because they constitute an improper delegation of governmental powers to private citizens.
To properly understand the climate in which this matter is before the court, a short history of the background is required.
In early spring of this year newspaper articles alleged extensive corruption within the Police Department. In response thereto the Mayor, on April 23, 1970, appointed a committee of five high-ranking public officials to investigate such allegations. The members of that committee were the Corporation Counsel, Commissioner of Investigations, and Police Commissioner of the City of New York, and the District Attorneys of New York and Bronx Counties. After the committee commenced to function, it reported on the magnitude of the task and the difficulties of properly performing the investigation in light of the demanding responsibilities upon the members in connection with their respective offices and recommended to the Mayor that they ‘ ‘ be replaced with an independent investigative body, appointed by you from the private sector, with full authority to carry forward this investigation.” Shortly thereafter the Mayor issued Executive Order No. 11, which set up the commission, here under attack, to investigate the alleged corruption and he appointed thereto the members who are defendants herein. The City Council subsequently passed Local Law No. 13 investing the commission with certain powers.
As indicated, petitioners are primarily relying upon section 440 of the City Charter as the basis for having the present *620 commission declared invalid. Section 440 had its genesis in the controversy surrounding General Order No. 14 promulgated by the Police Commissioner of this city on May 17, 1966. That order established a Civilian Review Board consisting of seven members, four of whom were to be appointed by the Mayor from outside of city government. The jurisdiction of such board was limited to investigation and review of allegations of misconduct by members of the Police Department involving: (a) unnecessary or excessive use of force; (b) abuse of authority; (c) discourtesy, or abusive or insulting language; and (d) language, conduct or behavior which is derogatory of a person’s race, religion, creed or national origin. When a legal challenge to the structure and composition of such Civilian Review Board proved unsuccessful (see Cassese v. Lindsay, 51 Misc 2d 59), an amendment to the New York City Charter was sponsored which declared the public policy of the City of New York to be that “ civilian complaints against members of the police' department of the city of New York shall be investigated and dealt with fully and fairly by the appropriate official regularly charged with the governance and discipline of the police department without interference by any person or group of persons not regularly in police service.” That amendment, which upon its approval by the electorate became section 440 of the City Charter, specifically provided that: “Neither the mayor, the commissioner, nor any other administrator or officer of the city of New York shall have power to authorize any person, agency, board or group to receive, to investigate, to hear, or to require or recommend action upon, civil complaints against members of the police department as provided in this section.”
While petitioner Kiernan’s own papers indicate that the Civilian Review Board controversy in 1966 centered about the issue of “police brutality”, the afore-noted broad interdict contained in section 440 would be controlling upon any commission concerned with ‘1 civilian complaints against members of the police department ” even where such complaints involve corruption rather than brutality. A reading of the entire section makes clear, however, that what is contemplated is an agency concerned with the misconduct of individual members of the Police Department predicated upon specific ‘£ civilian complaints ’ ’ which are, in the first instance, received by said agency. In other words, what is proscribed is an essentially passive agency not designed or empowered to seek out complaints generally but rather merely to hear and recommend on specific “ civilian ” complaints which are brought to it regarding the derelictions of particular police officers.
*621 The character of the commission here under attack is wholly different. It is concerned with generally exploring the over-all situation regarding police corruption. As indicated by the Executive Order, said commission is, first to investigate the extent of the alleged corruption, second to inquire into and evaluate the efficiency of existing procedures for investigating allegations of police corruption and present practices designed to prevent corruption, third to make appropriate recommendations for improvements therein, and fourth to hold hearings and take evidence to ascertain the necessary facts. There is nothing contained in section 440 of the City Charter which prohibits the authorization of an agency or commission designed to perform these functions. As indicated, that section only prohibits a group whose limited function centers upon receiving and investigating specific complaints against particular members of the department, and accordingly said section would not constitute a bar to the commission appointed under Executive Order No. 11.
Authority for the issuance of the Executive Order appointing the commission can be found in section 3 of the New York City Charter which provides that: ‘ ‘ The mayor shall be the chief executive officer of the city. He may, by executive order, at any time, create or abolish bureaus, divisions or positions within his executive office as he may deem necessary to fulfill his duties.”
The extent of his power in that regard was a subject of the statement of the court in Matter of Dairymen’s League Co-op. Assn. v. Murtagh (274 App. Div. 591, 594, affd. 299 N. Y. 634) as follows: ‘ ‘ The Mayor is under a duty to communicate to the council annually a general statement as to the finances, affairs and activities of the city and its agencies; to recommend to the city council legislation which he deems necessary or desirable; to keep himself informed as to the activities of city agencies; to take measures for the efficient conduct of their business, and to cause all provisions of law to be enforced. * * * He may command any investigation which will supply him with the information required ” (italics supplied).
While this determination was under the old charter, it is equally valid under the present charter, particularly since, as was made clear by the Charter Revision Commission, it was the intention of the draftsmen to increase, not decrease, the Mayor’s powers under the new charter. It having been found that the Mayor has the power to appoint such commission, it necessarily follows that the Local Law giving it power to operate is also proper.
*622 The scope of this power is logically correlative to those powers which the Mayor has with respect to his Commissioner of Investigations. No basis exists for distinguishing between the power of the Mayor to direct or control any investigation by the commissioner as opposed to his power to create an independent commission, as he did here under section 3 of the charter, and direct and control its operations. (See, generally, 3 McQuillin, Municipal Corporations [3d ed., rev.], § 12.43, p. 223, and Matter of Fuentes v. Fishel, 44 Misc 2d 943.)
It was not the intention of the electorate, nor of the City Council in enacting section 440 of the charter, to deprive the Mayor of his general investigatory powers with respect to the Police Department, one of the agencies of government within his jurisdiction. That section was concerned with civilian complaints against members of the Police Department and its provisions limited to that sphere. Of course, the' upholding of the commission herein does not constitute a prejudgment as to the quality of work of the department or its internal procedures or the extent of improprieties of individual members of the force. Indeed, it is the commission that is charged with the responsibility of determining the extent thereof and to suggest possible changes in present procedures, which will clearly be in the public interest.
The court finding that the appointment of the commission herein was a proper exercise of the Mayor’s power, that the concomitant Local Law was a proper exercise of the City Council’s power, and that there is no section of the charter limiting that power, petitioners’ motion is denied and the cross motion for summary judgment granted.