[No. S035914. Dec. 12, 1994.]

RANDY DIBB, Plaintiff and Appellant, v.
COUNTY OF SAN DIEGO et al., Defendants and Respondents;
CITIZENS LAW ENFORCEMENT REVIEW BOARD, Intervener and
Respondent.

COUNSEL

Bobbitt & Gattey, James M. Gattey and Vicki L.Gilbreath for Plaintiff and Appellant.

Edwin L. Miller, Jr., District Attorney (San Diego), Thomas F. McArdle and James E. Atkins, Deputy District Attorneys, Michael Capizzi, District Attorney (Orange), Maurice Evans, Assistant District Attorney, Guy Ormes and Burl Estes, Deputy District Attorneys, as Amici Curiae on behalf of Plaintiff and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley, Chief Deputy County Counsel, and Valerie Tehan, Deputy County Counsel, for Defendants and Respondents.

Jordan C. Budd, Robin S. Toma, Mark D. Rosenbaum, John M. Crew, John R. Reese and Julie E. Cohen as Amici Curiae on behalf of Defendants and Respondents.

Procopio, Cory, Hargreaves & Savitch, James G. Sandler, Lynne R. Lasry and David A. Niddrie for Intervener and Respondent.

**OPINION**

LUCAS, C. J.—We granted review to decide whether the County of San Diego may constitutionally amend its charter to provide for the creation of a citizens board to review public complaints about the county sheriff and probation departments, and vest that board with power to subpoena witnesses and documents. We conclude the County of San Diego has authority under California Constitution, article XI, sections 3, subdivision (a), and 4, subdivisions (e) and (h), to create a citizens review board and to confer the power to issue subpoenas on that board. Accordingly, we affirm the judgment of the Court of Appeal so holding.

### I. *Facts and Procedure*

In November 1990, the voters of the County of San Diego amended their county charter by enacting section 606, which required the county board of supervisors to establish by ordinance a "Citizens Law Enforcement Review Board" (CLERB or the board) and appoint citizens to the board for unpaid terms. (§ 606, subd. (a).)

The charter amendment sets forth the "powers and duties" of the CLERB. (San Diego County Charter, § 606, subds. (d), (f) & (g).) It grants the CLERB "power to subpoena and require attendance of witnesses and the production of books and papers pertinent to its investigations and to administer oaths." (*Id.* subd. (d).) It then specifies that the board of supervisors shall establish the duties of the CLERB, which may include, inter alia, review and investigation of citizen complaints concerning use of excessive force, discrimination or sexual harassment against members of the public, and false arrest, etc., by employees of the county sheriff's department or the probation department. (*Id.* subd. (f)(1).) The CLERB is also given authority to investigate, on its own motion, deaths of individuals "arising out of or in connection with actions of peace officers" employed by the sheriff's department or the probation department. (*Id.* subd. (f)(2).)

Pursuant to the charter amendment, the board of supervisors enacted Ordinance No. 7880, which added article XVIII (entitled "Citizens Law Enforcement Review Board") to the county administrative code. Section 340 of the code sets out the "purpose and intent" of the enactment: The CLERB

is designed to "advise" and make "recommendations" to the board of supervisors, the sheriff, and the chief probation officer concerning complaints against peace officers employed by the county. The code specifies that the CLERB "will be advisory only and shall not have authority to manage or operate the Sheriff's Department or the Probation Department or direct the activities of any County officers or employees . . . . The [CLERB] shall not decide policies or impose discipline against officers or employees of the County . . . ." (San Diego County Admin. Code, art. XVIII, § 340.) Thereafter, the code sets out the powers and duties of the CLERB. Section 340.11 defines the CLERB's power to issue subpoenas,[1] and section 340.9 defines its duties.[2]

Plaintiff filed a taxpayer's suit (Code Civ. Proc., § 526a) to enjoin the county from spending funds (stipulated to be $450,000 in the first year) in order to implement the CLERB. He asserted there is no legal authority for the creation of the CLERB, and that in any event it is not legally authorized to issue subpoenas. The trial court rejected plaintiff's arguments and denied his application for a permanent injunction. The Court of Appeal affirmed, concluding the board of supervisors is authorized to create the CLERB and that because the California Constitution, article XI, section 4, subdivision (e), provides that county charters shall specify the "powers and duties" of county officers, the county voters are also permitted to grant to the CLERB, by charter amendment, the power to issue subpoenas.

---

[1] The code provision mirrors the language of the charter amendment: "The Review Board shall, pursuant to the Charter of the County of San Diego, section 606 (d), have the power to subpoena and require attendance of witnesses and the production of books and papers pertinent to its investigations and to administer oaths." (San Diego County Admin. Code, art. XVIII, § 340.11.)

[2] That code provision imposes on the CLERB the "duties and responsibilities" to: (a) "Receive, review and investigate citizen complaints" against county peace officers; (b) "Review and investigate" deaths arising out of or in connection with actions of county peace officers "regardless of whether a citizen complaint regarding such death has been filed []"; (c) "Prepare reports, including at least the Sheriff or the Probation Officer as recipients, on the results of any investigations []"; (d) "Prepare an annual report to the Board of Supervisors [] summarizing the activities and recommendations of the Review Board []"; (e) "Notify in writing any citizen having filed a complaint with the Review Board of the disposition of his or her complaint. []"; (f) "Review and make recommendations on policies and procedures of the Sheriff and the Probation Officer to the Board of Supervisors, the Sheriff and the Chief Probation Officer."; (g) "Annually inspect county adult detention facilities and annually file a report of such visitations . . . with the Board of Supervisors []"; and (h) "Establish necessary rules and regulations for the conduct of its business, subject to approval of the Board of Supervisors." (San Diego County Admin. Code, art. XVIII, § 340.9.)

## II. *Analysis*

### A. *Charter counties and cities under the state Constitution*

Article XI of our Constitution concerns "local government." Section 1, subdivision (a), of that article divides the state into counties, "which are legal subdivisions of the State." Subdivision (b) of that section (hereafter section 1(b)) states: "The Legislature shall provide for county powers . . ." and "an elected governing body in each county." A parallel provision—article XI, section 2—grants the Legislature authority to provide for formation of cities, and to "provide for city powers." Under the authority of these sections, the Legislature has enacted hundreds of statutes that regulate the powers and governmental structure of both counties and cities. (See Gov. Code, tit. 3 ["Government of Counties"], § 23000 et seq.; *id.*, tit. 4 ["Government of Cities"], § 34000 et seq.; & *id.*, tit. 5, ["Local Agencies"], § 50001 et seq.)

Article XI, section 3, allows for an alternative governmental structure—independent from the legislative schemes enacted pursuant to sections 1(b) and 2 of article XI—for both counties and cities that adopt a charter for their own governance. Subdivision (a) of section 3 (hereafter section 3(a)) states: "For its own government, a county or city may adopt a charter by majority vote of its electors voting on the question. . . . *County charters adopted pursuant to this section shall supersede* any existing charter and *all laws inconsistent therewith.* The provisions of a charter are the law of the state and have the force and effect of legislative enactments." (Italics added.)

Article XI, sections 4 and 5, concern county and city charters, respectively, and grant to both entities varying degrees of "home rule," i.e., the authority of the people to create and operate their own local government and define the powers of that government, within the limits set out by the Constitution. (See *Younger* v. *Board of Supervisors* (1979) 93 Cal.App.3d 864, 869 [155 Cal.Rptr. 921] (hereafter *Younger*).)

Article XI, section 4—the provision at issue in this case—addresses the structure and operation of county government. In so doing it both specifies and confines the authority of county charters. It states: "County charters shall provide for: [¶] (a) A governing body of 5 or more members . . . . [¶] (b) The compensation, terms, and removal of members of the governing body. . . . [¶] (c) An elected sheriff, an elected district attorney, an elected assessor, other officers, their election or appointment, compensation, terms and removal. [¶] (d) The performance of functions required by statute. [¶] (e) *The powers and duties of* governing bodies and *all other county officers*, and

for consolidation and segregation of county officers, and for the manner of filling all vacancies occurring therein." (Italics added.) Section 4 further provides that general laws enacted by the Legislature pursuant to article XI, section 1(b), shall be *"superseded by said charter as to matters for which, under this section it is competent to make provision in such charter, and for which provision is made therein, except as herein otherwise expressly provided."* (Cal. Const., art. XI, § 4, subd. (g), italics added.) Finally, subdivision (h) specifies that charter counties have at minimum those "powers" provided by the Legislature, pursuant to section 1(b), to noncharter (i.e., "general law") counties.[3]

Whereas *charter county* "home rule" authority is limited to matters concerning the structure and operation of local government, the version of "home rule" afforded to a *charter city* is substantially more expansive. First, in comparison with charter counties, article XI, section 5, subdivision (b), gives charter cities even broader authority to structure and organize their government; for example, it grants "plenary authority" over the election, removal, and compensation of municipal officers and employees. (*Ibid.*) In addition, and unlike charter counties, charter cities are also given broad authority to "make and enforce all ordinances and regulations in respect to *municipal affairs . . . .* City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith." (Cal. Const., art. XI, § 5, subd. (a).) There is no corresponding grant of authority and autonomy over the "county affairs" of charter counties. (*Johnson* v. *Bradley* (1992) 4 Cal.4th 389, 406 [14 Cal.Rptr.2d 470, 841 P.2d 990]; see also Sato, *"Municipal Affairs" in California* (1972) 60 Cal.L.Rev. 1055, 1115.) Indeed, as noted above, the Constitution requires charter counties to provide for "[t]he performance of functions required by statute." (Art. XI, § 4, subd. (d).))

As Professor Van Alstyne noted in his authoritative review of the predecessors to present article XI, sections 3, 4 and 5: "The principal difference between 'city home rule' and 'county home rule' lay in the fact that since 1896, cities, by express provision in their charters could acquire control of 'municipal affairs' independent of general laws pertaining thereto. [Citations.] The scope of home rule available to cities thus was coextensive with the purview of the broad and general expression, 'municipal affairs'. No such general grant of authority to incorporate provisions relating to 'county affairs' was included in [the prior version of present section 4] with respect to county charters. Surely, if the proponents of county home rule sincerely

---

[3]These provisions of section 4 were originally enacted in 1911. They were revised and condensed to read as they presently do, with no substantive change, by amendment on June 2, 1970.

wished to authorize a fully parallel system of county autonomy matching that enjoyed by charter cities, this omission was a strange way to accomplish their object." (Background Study Relating to Article XI, Local Government (1966) Cal. Const. Revision Com., Proposed Revision, at pp. 140-141.) These observations remain a valid description of present sections 3(a), 4, and 5, all of which, pursuant to article XI, section 13, must "be construed as a restatement of all related provisions of the Constitution in effect immediately prior to [June 2, 1970, the effective date of the current version of article XI], and as making no substantive change."

Plaintiff makes much of the above described distinction between the grant of autonomy over "municipal affairs" to charter cities and the corresponding absence of any such grant of autonomy over "county affairs" of charter counties. As we shall explain, however, the distinction is irrelevant in this case, because the constitutional authority for defendants' enactment and implementation of the CLERB rests, not on any purported "county affairs" power of charter counties, but instead on the long-standing grant of *structural* and *operational* "home rule" powers found in article XI, section 4, subdivision (e) (hereafter section 4(e)).

### B. Authority for creation of the CLERB, and for its subpoena power

As noted above, California Constitution, article XI, section 4, subdivision (h), provides that charter counties "shall have all the powers that are provided by this Constitution or *by statute* for [general law] counties." (Italics added.) Accordingly, before considering whether the Constitution itself authorizes creation of the CLERB and the charter amendment's grant of power to the CLERB to issue subpoenas, we must first consider whether there is *statutory* authority for creation of a board such as the CLERB, and for the grant to such a board of the power to issue subpoenas. (See, e.g., *Cumero* v. *Public Employment Relations Bd.* (1989) 49 Cal.3d 575, 586 [262 Cal.Rptr. 46, 778 P.2d 174], and cases cited [court will not decide constitutional questions unless compelled to do so].)

### 1. Creation of the CLERB

Defendants assert Government Code sections 31000.1 and 25303 (all further statutory references are to this code unless otherwise indicated) provide authority for the creation and existence of the CLERB. Section 31000.1 provides: "The board of supervisors may appoint commissions or committees of citizens to study problems of general or special interest to the board and to make reports and recommendations to the board. The members of such commissions need not be specially trained or experienced with respect to the matters to be studied. . . ."

Section 25303 requires a county board of supervisors to "supervise the official conduct of all county officers, and officers of all districts and other subdivisions of the county, and *particularly* insofar as the functions and duties of such county officers . . . relate to the assessing, collecting, safekeeping, management, or disbursement of public funds." (Italics added.) The statute specifies that the "independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff and district attorney" shall not be "affect[ed]" or "obstruct[ed]" by the board of supervisors' oversight.

Plaintiff asserts section 25303 gives the board of supervisors only the authority to monitor the *fiscal* conduct of county officers. Although the statute stresses the need for such supervision, it is plainly not so limited. Indeed, as one court has observed in a different context, the statute permits the board of supervisors to "supervise county officers in order to insure that they faithfully perform their duties . . . ." (*People* v. *Langdon* (1976) 54 Cal.App.3d 384, 390 [126 Cal.Rptr. 575].)[4] Indeed, the operations of the sheriff's and probation departments and the conduct of employees of those departments are a legitimate concern of the board of supervisors. As the Court of Appeal observed below: "Review of citizen complaints and peace officer-related deaths might suggest the need for new or different types of training for personnel in the two departments which the [board of supervisors] would have to fund. Politically the [board of supervisors] might be concerned about public distrust of investigations conducted by either the sheriff or district attorney and hopeful that investigations by a group not aligned with law enforcement would restore public confidence, particularly if that group reached conclusions consistent with the sheriff and district attorney."

Plaintiff next asserts the very existence of the CLERB is preempted by or otherwise in conflict with state law. He argues the CLERB will inevitably obstruct and infringe on the investigative functions of the sheriff (see Pen. Code, § 832.5, subd. (a) [mandating establishment by sheriff of "procedure to investigate citizens' complaints" against sheriff personnel]) and district attorney, and the constitutional oversight of the Attorney General over the sheriff (see Cal. Const., art. V, § 13 [Attorney General has "direct supervision over every district attorney and sheriff"]). We agree with the Court of Appeal that these concerns are answered by section 25303 and San Diego County Administrative Code article XVIII, section 340.15, under which the board operates. The cited statewide statute, as noted above, specifies that the

---

[4]The *Langdon* court went on to observe, correctly, that the board of supervisors "does not have the power to perform the county officers' statutory duties for them or direct the manner in which the duties are performed." (*Ibid.*)

board of supervisors' oversight responsibility "shall not obstruct the investigative function of the sheriff of the county nor shall it obstruct the investigative and prosecutorial function of the district attorney of a county." (§ 25303.) The cited county code section requires the CLERB to "cooperate and coordinate" with the sheriff and district attorney so that all three may properly discharge their responsibilities. (San Diego County Admin. Code, art. XVIII, § 340.15.) Given these requirements, we assume the CLERB will not interfere with the proper functioning of the two other county officials, or with the Attorney General's constitutional responsibility to oversee the sheriff. (Cf. *People* v. *Brophy* (1942) 49 Cal.App.2d 15, 28 [120 P.2d 946]; *Beck* v. *County of Santa Clara* (1988) 204 Cal.App.3d 789, 796-797 [251 Cal.Rptr. 444].)[5]

We conclude that under section 25303, the board of supervisors has a statutory duty to supervise the conduct of all county officers. (See *People* v. *Langdon, supra*, 54 Cal.App.3d 384, 390.) Moreover, section 31000.1 permits the board of supervisors to establish a commission of citizens to study and report on matters within the board's "general or special interest." It follows that the creation and existence of the CLERB is authorized by statute, and is thus a proper exercise of charter county authority under California Constitution, article XI, section 4, subdivision (h).

### 2. *The grant to the CLERB of the power to issue subpoenas*

No such *statutory* authority exists for the grant to the CLERB of the power to issue subpoenas. As plaintiff observes, although the Legislature has granted the power to issue subpoenas to various county entities—e.g., county boards of supervisors and their committees (§§ 25170, 25171), county civil service commissions (§ 31110.2), county coroners (§ 27498), county hearing officers (§ 27721), and county retirement boards (§ 31535)—the Legislature has not conferred the power to issue subpoenas on citizens review boards such as the CLERB. Plaintiff and amici curiae on his behalf infer from this that the Legislature has preempted the field of "entities entitled to issue subpoenas," and hence the challenged charter amendment conflicts with, and is preempted by, the alleged statewide scheme. (See Cal. Const., art. XI, § 7.)

■ It is unnecessary to decide whether the Legislature has preempted the field of entities entitled to issue subpoenas, because, as explained *post*, pages

---

[5]On a related point, plaintiff suggests the CLERB's subpoena power conflicts with general law because the board might issue subpoenas that seek information made confidential by Penal Code section 832.7, which imposes on the sheriff the duty to maintain the confidentiality of peace officer personnel records or information obtained from those records. No such conflict exists. The charter amendment does not (and may not) supersede general law governing privileges or confidentiality of records, and any subpoena that seeks privileged information is subject to a motion to quash.

1214-1217, we conclude that even assuming the Legislature intends to do so with respect to noncharter counties, it may not do so with respect to a county whose charter, pursuant to article XI, sections 3(a) and 4(e), properly grants subpoena power to county officers. For the reasons set out below, we conclude that defendant's charter properly provides for the power to issue subpoenas.

As noted above, charters adopted by counties "for [their] own government" "shall supersede any existing charter *and all laws inconsistent therewith.* The provisions of a charter are the law of the State and have the force and effect of legislative enactments." (Cal. Const., art. XI, § 3(a), italics added.) Section 4(e) of the same article specifies that county charters shall provide for the *"powers and duties of* governing bodies and *all other county officers . . . ."* (Italics added.)

Although, as noted above, charter counties lack the *"municipal affairs"* authority of charter cities, under the above quoted constitutional provisions they nevertheless share much of the authority exercisable by charter cities over the *structure and operation* of their local government. Accordingly, to the extent the power to issue subpoenas is properly grounded on the county's authority to provide for the "powers and duties" of its local officers and the operation of its local government, it is within the competence of the charter.

Plaintiff advances a number of arguments against the conclusion that the grant to the CLERB of power to issue subpoenas is within the competence of the county charter. As we explain below, none of the arguments is meritorious.

a. *"County officers"*

Plaintiff suggests members of the CLERB are not "county officers" within the meaning of section 4(e), and hence the charter may confer no "powers or duties" on them. He relies on *City Council* v. *McKinley* (1978) 80 Cal.App.3d 204, 210 [145 Cal.Rptr. 461], for the proposition that to qualify as public officers, there must be a *"delegation to the officer of some portion of the sovereign functions of government* either legislative, executive, or judicial [citation]." (Italics added.)

As the Court of Appeal acknowledged in *McKinley, supra,* our own decision in *Coulter* v. *Pool* (1921) 187 Cal. 181 [201 P. 120] "has become the leading authority in this area." (*City Council* v. *McKinley, supra,* 80 Cal.App.3d at p. 210.) In *Coulter, supra,* we reconsidered and rejected ancient authority that broadly defined the term "public officer," and reached the following conclusions:

 "A public office is ordinarily and generally defined to be the right, authority, and duty, created and conferred by law, the tenure of which is not transient, occasional, or incidental, by which for a given period an individual is invested with power to perform a *public function* for the benefit of the public. [Citation.] . . . . The most general characteristic of a public officer, which distinguishes him from a mere employee, is that *a public duty is delegated and entrusted to him, as agent, the performance of which is an exercise of a part of the governmental functions of the particular political unit for which he, as agent, is acting. . . .* [Citations.] As a matter of course, in keeping with these definitions, a county officer is a public officer and may be specifically defined to be one who fills a position usually provided for in the organization of counties and county governments and is selected by the political subdivision of the state called the 'county' to represent that governmental unit, continuously and as part of the regular and permanent administration of public power, in carrying out certain acts with the performance of which it is charged in behalf of the public. [Citations.]" (*Coulter* v. *Pool, supra*, 187 Cal. at pp. 186-187, italics added and deleted.)

Shortly thereafter, in *Spreckels* v. *Graham* (1924) 194 Cal. 516 [228 P. 1040] we reaffirmed our holding in *Coulter* v. *Pool, supra*, 187 Cal. 181. In doing so, we explained that "two elements now seem to be almost universally regarded as essential" to a determination of whether one is a "public officer": "First, a tenure of office 'which is not transient, occasional or incidental,' but is of such a nature that the office itself is an entity in which incumbents succeed one another . . . , and, second, the *delegation to the officer of some portion of the sovereign functions of government,* either legislative, executive, or judicial." (*Spreckels* v. *Graham, supra*, 194 Cal. at p. 530, italics added.)

It seems clear that the italicized phrase quoted above from *Spreckels* v. *Graham, supra*, 194 Cal. at page 530, and repeated in *City Council* v. *McKinley, supra*, 80 Cal.App.3d at page 210, is in fact, and was intended to be, consistent with the similar language employed in our leading case on the issue, *Coulter* v. *Pool, supra*, 187 Cal. at page 187. In other words, a public officer (or a county officer) is one who, inter alia, is delegated a public duty to exercise *a part of the governmental functions* of the political unit for which he, as agent, is acting. That test is plainly met here. The members of the CLERB are delegated the duty to hold hearings, administer oaths and issue subpoenas, all in order to investigate, on behalf of the board of supervisors, complaints about the official conduct of employees of the county sheriff's and probation departments. Whether this authorization of investigative power is denominated a delegation of "some portion of the sovereign functions of government" (*Spreckels* v. *Graham, supra*, 194 Cal. at

p. 530; *City Council* v. *McKinley, supra,* 80 Cal.App.3d, at p. 210) or a delegation of "part of the governmental functions" of the county (*Coulter* v. *Pool, supra,* 187 Cal. at p. 187), the affirmative showing required by our cases is met. Accordingly, we conclude that members of the CLERB possess the essential attributes of county officers: They are appointed under the law for a fixed term of office and are delegated a public duty to investigate specified citizen complaints against county sheriff and probation department employees, and to make recommendations to the board of supervisors.[6] (*Coulter* v. *Pool, supra,* 187 Cal. 181, 186-187.)[7]

### b. *"Specific" constitutional authority for powers*

Plaintiff relies on decisions stating that charter counties have only such authority as is "expressly" conferred by the Constitution or by statute. (See *Younger, supra,* 93 Cal.App.3d 864, 870 ["counties . . . have independently only such legislative authority that has been expressly conferred by the Constitution and the laws of the state"]; *County of Sacramento* v. *Fair Political Practices Com.* (1990) 222 Cal.App.3d 687, 690 [271 Cal.Rptr. 802] [quoting and relying exclusively on *Younger, supra*]; *Cawdrey* v. *City of Redondo Beach* (1993) 15 Cal.App.4th 1212, 1221, 1222 [19 Cal.Rptr.2d 179] [same].) Plaintiff observes that the challenged power to issue subpoenas is not granted (specifically or by implication) by statute. He thus concludes that defendants' charter amendment is invalid because our state *Constitution* nowhere specifically grants to citizens review boards the power to issue subpoenas.

Plaintiff reads too much into the cited cases. They do not require that our Constitution expressly confer the *specific* authority under challenge. When *Younger* is read in context, it becomes apparent that the court did not intend the strict rule advanced by plaintiff.

---

[6]The fact that they are unsalaried is not disqualifying. (See Mechem, A Treatise on the Law of Public offices and Officers (1890) § 8, p. 6 [relied on in *Coulter* v. *Pool, supra,* 187 Cal. at p. 186].)

[7]We dismiss any notion that CLERB members are not county officers merely because they are not specifically denominated as such in the charter. The authority suggested for this proposition, article XI, section 4, subdivision (c), requires the charter to *"provide for:* [¶] . . . [¶] [county] officers, their election or appointment, compensation, terms and removal." (Italics added.) The charter amendment established the CLERB's membership (no less than nine nor more than fifteen members), compensation (none), appointment (by the board of supervisors), terms (not to exceed two consecutive three-year terms), removal (at any time, by a majority vote of the board of supervisors), and the filling of vacancies (by the board of supervisors, for the balance of the unexpired term). (San Diego County Charter, § 606, subds. (a)-(c).) We are unaware of any authority for the proposition that the cited constitutional provision requires a charter to specifically list all of its county officers, or that those who meet the legal test for such officers (see discussion in text, above) are nevertheless not county officers because a charter fails to specifically designate them as such.

At issue in *Younger, supra*, 93 Cal.App.3d 864, was whether article XI, section 4, subdivision (b), permitted a county charter to impose term limitations on the county's elected officials. The court, in an opinion authored by Justice Wiener (also the author of the Court of Appeal decision herein), noted that the cited clause permitted a county charter to provide for the "compensation, terms, and removal" of elected officials, but it did not permit the charter to provide for the "qualifications" or "tenure" of those officials. At the same time, the court observed, the Constitution permitted a charter county to set the qualifications and tenure of its nonelected employees. (*Younger, supra*, 93 Cal.App.3d at pp. 871-872, citing Cal. Const., art. XI, §§ 1(b) & 4, subd. (f).) The court thus concluded that the state Constitution did not *authorize* the county, through its charter, to impose term limitations on its elected officials. (93 Cal.App.3d at p. 873.)

It is apparent that the test actually applied in *Younger* was not whether the Constitution expressly conferred the specific challenged power; instead, the inquiry focused on whether, given the Constitution's text, the challenged power was "authorized." Indeed, apart from the passage in *Younger* relied on by plaintiff, this latter formulation was used by that court throughout the rest of its discussion. (See, e.g., *Younger, supra*, 93 Cal.App.3d at pp. 869-870, quoting *Whelan* v. *Bailey* (1934) 1 Cal.App.2d 334, 335-337 [36 P.2d 709]; see also 93 Cal.App.3d at p. 870 ["Therefore, a charter county has only those powers and can enact within its charter only those provisions authorized by the Constitution."].) We agree that this is the appropriate inquiry, and hence reject plaintiff's claim that because the Constitution does not expressly grant to charter counties the specific authority to give its county officers power to *issue subpoenas*, charter counties have no authority to do so by charter amendment pursuant to the general "powers and duties" clause of article XI, section 4(e) of the Constitution. Instead, as the *Younger* court impliedly recognized, the appropriate inquiry is whether the charter amendment is "authorized" by the Constitution. In making this assessment, it is necessary to determine whether the power to issue subpoenas is an appropriate power under section 4(e). This brings us to plaintiff's next point.

 c. *Scope of section 4(e)*

Plaintiff asserts the Constitution's authorization for the provision by charter of the "powers" of county officials cannot broadly apply "to *any* power the county electorate may choose to provide." This is undoubtedly true; there are unquestionably numerous kinds of powers that the charter may not constitutionally grant to the CLERB or to other county officers. The question is whether the power authorized in *this* case is within the constitutional authority of the charter.

Neither party nor their respective amici curiae have brought to our attention any controlling authority on this issue. Yet, general guidance is found in *Reuter* v. *Board of Supervisors* (1934) 220 Cal. 314 [30 P.2d 417] (hereafter *Reuter*), which concerned a challenge to a charter county's authority to create a new county officer of "county engineer," and to vest in him powers and duties of "road commissioner" that the general statewide law granted to and imposed on the county board of supervisors. In upholding the charter provision, we construed the predecessor to article XI, section 4(e) of the Constitution—former section 7½—which, immediately after specifying that county charters "shall provide . . . [¶] For the powers and duties of boards of supervisors and all other county officers . . . ," also stated: "[*P*]*rovided, that the provisions of such charters relating to the powers and duties of boards of supervisors and all other county officers shall be subject to and controlled by general laws.*" (Italics added.)

We held this proviso void, as being "inconsistent with and repugnant to the general provision of that portion of the section of which it is a part" (*Reuter, supra*, 220 Cal. at p. 320), because, we reasoned, if general laws controlled the charter's provision of "powers and duties" relating to county officers, then the thrust of the provision for establishment of powers and duties through the county charter would be defeated. We did "not think the framers of the amendment, nor the people of the state who ratified it, contemplated any such absurd result." (*Id.* at p. 321; see also *id.* at pp. 322-324.)

The powers and duties involved in *Reuter* included the duty to "take charge of the highways" in the county and the power to "employ all men, teams, watering cars and all help necessary to do the [road] work . . . ." (*Reuter, supra*, 220 Cal. at p. 319.) We upheld the charter provision, stating: "[A] county charter may provide for powers and duties of county officers although such powers and duties, as fixed by the charter, may differ from and be in conflict with the powers and duties of such officers as provided by the general laws of the state." (*Id.* at p. 326.) We concluded by quoting the predecessor to current article XI, section 3(a), and noting that to the extent it is authorized by the Constitution, a county " 'charter . . . shall become the organic law thereof relative to matters therein provided . . . and shall supersede all laws inconsistent with such charter relative to the matters provided in such charter.' " (220 Cal. at p. 226, quoting Cal. Const., art. XI, former § 7½, par. 17.)

Although *Reuter, supra*, 220 Cal. 314, construed the predecessors to present article XI, sections 4(e) and 3(a), it remains an accurate construction of those provisions. (See Cal. Const., art. XI, § 13, quoted *ante,* p. 1208.)

The import of *Reuter, supra*, 220 Cal. 314, is twofold. First, it establishes that powers and duties legitimately conferred by charter on county officers *supersede* general law. Accordingly, even if we were to assume, as plaintiff suggests, that the Legislature intended to preempt or cover the field of entities that may issue subpoenas, *Reuter* stands for the proposition that, under the state Constitution, the Legislature may not do so if the grant of power to issue subpoenas is the type of "power" properly conferrable under article XI, section 4(e) of the Constitution (see *post,* fn. 10). Second, *Reuter* sheds some light on that latter factor, i.e., the type or kind of "power" conferrable under section 4(e). As noted above, the "powers" at issue in *Reuter* included the power to "employ all men, teams, watering cars and all help necessary to do the [road] work . . . ." (220 Cal. at p. 319.) The conferral of power to contract for employment and/or services vested in the county engineer the authority to bind the county by contract—a substantial and important power that might subject the county to liability for its breach, but a power that was nonetheless regular and necessary in order for the engineer to fulfill the duties imposed on him.

Viewed in this context, we cannot conclude that the power conferred on the CLERB is outside the legitimate authority of the charter under article XI, section 4(e) of the Constitution. The power to issue subpoenas is one that is often conferred throughout the nation on boards such as the CLERB. (Petterson, *Police Accountability and Civilian Oversight of Policing: An American Perspective,* in Complaints Against the Police: The Trend to External Review (Goldsmith edit. 1991) pp. 259, 287-289 [11 of 21 civilian review boards in large cities possess power to issue subpoenas]; see also *Brown* v. *City of Berkeley* (1976) 57 Cal.App.3d 223, 236 [129 Cal.Rptr. 1] [*charter city* citizens police review board granted power to issue subpoenas];[8] Richmond Mun. Code, § 3.54.080(b)(8) [same]; Santa Cruz Mun. Code, § 2.41.220(a)(*i*) [same].)[9] Moreover, the power to issue subpoenas is reasonably necessary to the full accomplishment of the legitimate goals of the

---

[8] Plaintiff asserts *Brown* v. *City of Berkeley, supra*, 57 Cal.App.3d 223, 236, is inapposite because that case was based on the charter city's "municipal affairs" authority. We find *Brown* instructive to the extent it indicates that power to issue subpoenas is an attribute of comparable citizens review boards in this state.

[9] Other jurisdictions have granted power to issue subpoenas to similar boards and entities. (See, e.g., *Barry* v. *Garcia* (Fla.Dist.Ct.App. 1991) 573 So.2d 932, 938 [subpoena power of citizen board appointed to investigate "police/community relations" invalid because power delegated by resolution of local legislature rather than conferred by voters' amendment of city charter]; cf. *Vance* v. *Ananich* (1985) 145 Mich.App. 833 [378 N.W.2d 616] [upholding municipal ombudsman's power to issue subpoenas]; *Citizens' Aide/Ombudsman* v. *Grossheim* (Iowa 1993) 498 N.W.2d 405 [upholding authority of "citizens' aide" to issue subpoenas to investigate complaints relating to penal/correctional agencies]; *Kelly* v. *Dinkins* (1992) 155 Misc.2d 787 [590 N.Y.S.2d 166] [upholding subpoena power of mayor's commission to investigate police corruption]; *Kiernan* v. *City of New York* (1970) 64 Misc.2d 617

legislation. (See, e.g., *City of Newark* v. *Benjamin* (1976) 144 N.J.Super. 58 [364 A.2d 563, 571-572] ["Without the power to subpoena witnesses, hearings before a [civilian review board] would be inadequate" and ineffective]; cf. *Vance* v. *Ananich, supra,* 378 N.W.2d 616, 618-619.) Given this, we reject plaintiff's assertion that the power granted by the charter amendment to issue subpoenas is outside the constitutionally authorized scope of section 4(e).[10]

### d. *Nature of power to issue subpoenas*

Plaintiff (and amici curiae on his behalf) advance a related argument that the power to issue subpoenas is inherently different from other legitimate powers that might be granted to a nonjudicial body, because it is a potent tool that may, in certain circumstances, be employed in an abusive and oppressive manner, "especially when it may be indiscriminately delegated and the subpoena is not returnable before a judicial officer." (See *Cudahy Packing Co.* v. *Holland* (1942) 315 U.S. 357, 363-364 [86 L.Ed. 895, 899, 62 S.Ct. 651] [Fair Labor Standards Act bars Administrator of Department of Labor from delegating subpoena power].) The present case does not concern delegation, but an express grant, by charter amendment, of power to issue subpoenas. In any event, we note that the high court quickly retreated from *Cudahy* by confining it to its facts (*Fleming* v. *Mohawk Co.* (1947) 331 U.S. 111 [91 L.Ed. 1375, 67 S.Ct. 1129]), and two years later Congress overruled *Cudahy.* (See *Donovan* v. *National Bank of Alaska* (9th Cir. 1983) 696 F.2d. 678, 681.)

In the same vein, plaintiff relies on a similarly distinguishable and ancient case, *Burns* v. *Superior Court* (1903) 140 Cal. 1 [73 P. 597], in which we upheld a statute insofar as it permitted a notary public to issue a subpoena compelling attendance of a witness at a deposition, but declared the statute unconstitutional insofar as it purported to authorize the notary public, on his own, to *adjudicate and punish as contempt the disobedience of his subpoena.* (*Id.* at pp. 12-14.) *Burns* thus stands for the established proposition that, unless the Constitution expressly or by necessary implication provides otherwise, only a court may adjudicate and punish contempt. The CLERB has no power to enforce or adjudicate punishment for violation of its subpoenas

---

[315 N.Y.S.2d 74] [commission to investigate police corruption granted power to issue subpoenas].)

[10]In so construing article XI, sections 3(a) and 4(e) of the Constitution in this case, we note that the county charter provision in question does not conflict with "[t]he performance of [any] functions required by statute" under article XI, section 4, subdivision (d) of the Constitution. We do not decide whether and to what extent a county charter provision providing for the "powers and duties . . . of county officers" under section 4(e) supersedes general state law when such a conflict exists.

—instead, it must proceed in court to enforce a subpoena under the court's contempt power—and hence *Burns* does not implicate the CLERB's power to issue subpoenas.

Nevertheless, we do not doubt the legitimacy of plaintiff's concern about possible misuse of the power to issue subpoenas. In this context, however, the potential for abuse does not appear to be any greater than that which exists when various other nonjudicial county entities exercise their established powers to issue subpoenas (see, e.g., §§ 25170, 25171 [board of supervisors], 31110.2 [civil service commission], 27498 [coroner], 27721 [hearing officers], 31535 [retirement board]), or when the civilian police review boards of charter cities exercise their power to issue subpoenas (see, e.g., *Brown* v. *City of Berkeley, supra,* 57 Cal.App.3d 223, 236; [City of Berkeley ordinance]; Richmond Mun. Code, § 3.54.080(b)(8); Santa Cruz Mun. Code, § 2.41.220(a)(*i*)). In those situations, as in the present, the concern about potential misuse of the subpoena power may be addressed through close scrutiny by the court in motions to quash, or in contempt actions to enforce, subpoenas. (See Code Civ. Proc. §§ 1985, 1987.1, 1991; cf. Gov. Code §§ 25173-25175.) The mere potential for abusive issuance of subpoenas does not compel a conclusion that the power to issue subpoenas is beyond the scope of power conferrable on county officers under article XI, section 4(e) of the Constitution.

### III. *Conclusion*

As we observed in *Reuter, supra,* 220 Cal. 314, in which we construed the predecessor to article XI, sections 3(a) and 4(e) of the Constitution, "[t]he general purpose [of the provision] was to give local self-government or county home rule to counties of the state by means of charters . . . . [¶] The people of the state in the adoption of this amendment had good cause to believe, and evidently did believe, that they were thereby providing a means whereby they might have home rule in their local and county affairs, including the right, in the words of the amendment, to provide for the powers and duties of their county officers. The amendment as adopted by them, when construed as a whole, is not only susceptible of such a construction, but cannot be given any other reasonable interpretation." (220 Cal. at pp. 326, 327.) We agree with the *Younger* court's similar observation that "home rule," as that term was used in *Reuter, supra,* 220 Cal. 314, and as that concept is reflected in article XI, sections 3(a) and 4(e) of our state Constitution, contemplates the right of the people of a charter county to create their own local government and define its powers within the limits set out by the Constitution. (*Younger, supra,* 93 Cal.App.3d at p. 869.) Construing the constitutional provisions in light of that purpose, we conclude the

charter county of San Diego has constitutional authority under article XI, sections 3(a) and 4(e) of the Constitution to confer the power to issue subpoenas on the CLERB. Accordingly, we affirm the judgment of the Court of Appeal.

Mosk, J., Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.

**KENNARD, J., Concurring.**—I agree with the majority that the County of San Diego acted within its authority under the state Constitution when it created the Citizens Law Enforcement Review Board (hereafter Board), and vested it with power to subpoena witnesses and documents. I also agree that the mere existence of the Board and its subpoena power does not obstruct either the county sheriff's investigative functions or the district attorney's investigative and prosecutorial responsibilities in violation of Government Code section 25303. And like the majority (maj. opn., *ante,* p. 1210), I am willing to assume, until the contrary is demonstrated, that the Board will exercise its subpoena powers in ways that avoid any such obstruction or interference.

But I would add a note of caution: because this case presents only a facial challenge to the charter amendment that created the Board, no evidence is before us showing how the Board has used its subpoena power to investigate suspected misconduct by peace officers or jail personnel, and we have not been asked to decide the legality of the Board's use of its subpoena power in any particular situation. Therefore, our decision should not be misconstrued as evidencing lack of concern with the not inconsiderable risk of conflict between the Board's investigations and those undertaken by the county sheriff or district attorney, particularly when those investigations are conducted simultaneously. Whether the Board's use of its subpoena power amounts to illegal interference, for instance, with the sheriff's investigation into allegations of personnel misconduct (Pen. Code, § 832.5) or with the possible filing of a criminal case will depend largely upon the subject under subpoena and the stage of investigation being conducted by the sheriff or the district attorney, and will necessarily be a fact-intensive determination.

With this caveat, I join the majority opinion.