BILL LOCKYER Attorney General CLAYTON P. ROCHE Deputy Attorney General
THE HONORABLE CATHIE WRIGHT, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
May an individual simultaneously serve as a member of the California Commission on Aging, the California Senior Legislature, and the Area Agency on Aging Advisory Council of California?
 CONCLUSION
An individual may simultaneously serve as a member of the California Commission on Aging, the California Senior Legislature, and the Area Agency on Aging Advisory Council of California.
 ANALYSIS
The Legislature has enacted a comprehensive statutory scheme, the Mello-Granlund Older Californians Act (Welf. Inst. Code, §§9000-9757.5; "Act"),[1] to help fulfill "the state's commitment to its older population and other populations served by the programs administered by the California Department of Aging" (§ 9000). The Act's provisions cover, among other aspects, the duties and responsibilities of the California Commission on Aging (§§ 9200-9206; "CCOA"), the California Senior Legislature (§§9300-9305; "CSL"), and the Area Agency on Aging Advisory Council of California (§9403; "TACC").
We are asked to determine whether an individual may serve simultaneously as a member of CCOA, CSL, and TACC. We conclude that a person may serve simultaneously in the three positions.
In the absence of a constitutional or statutory prohibition,[2] an individual may simultaneously hold two public offices so long as they are not incompatible.[3] The common law rule prohibiting the holding of incompatible offices, applicable in California, was described in 74 Ops.Cal.Atty.Gen. 82, 83 (1991) as follows:
 "`Offices are incompatible, in the absence of statutes suggesting a contrary result, if there is any significant clash of duties or loyalties between the offices, if the dual office holding would be improper for reasons of public policy, or if either officer exercises a supervisory, auditory, or removal power over the other. [Citations.]
 "`. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "`. . . A public officer who enters upon the duties of a second office automatically vacates the first office if the two are incompatible. [Citation.] Both positions, however, must be offices. . . .'"
Members of advisory boards and commissions do not hold "offices" for purposes of the common law rule since they do not exercise any of the sovereign powers of the state. (62 Ops.Cal.Atty.Gen. 325, 331 (1979); 57 Ops.Cal.Atty.Gen. 583, 585 (1974); 42 Ops.Cal.Atty.Gen. 93, 94-97 (1963).) In 83 Ops.Cal.Atty.Gen. 50, 52 (2000), we recently observed:
 "Members of advisory boards do not hold `offices' for purposes of the incompatible offices doctrine. An `office' for purposes of the doctrine is one in which the incumbent exercises a portion of the sovereign powers of the state in the performance of a public function, among other requirements. [Citations.] A person serving in an advisory capacity does not exercise any sovereign powers. [Citations.]. . ."
Examining each of the three positions in question in light of the above principles, we find first that CCOA consists of 25 persons, 19 of whom are appointed by the Governor, 3 are appointed by the Speaker of the Assembly, and 3 are appointed by the Senate Rules Committee. (§9200.) Members serve a term of office of three years. (§ 9201.) The duties of CCOA members are set forth in section 9202:
 "The duties and functions of the commission shall be to do all of the following:
 "(a) Serve as the principal advocate body in the state on behalf of older individuals, including, but not limited to, advisory participation in the consideration of all legislation and regulations made by state and federal departments and agencies relating to programs and services that affect older individuals.
 "(b) Participate with the department in training workshops for community, regional and statewide senior advocates, to help older individuals understand legislative, regulatory, and program implementation processes.
 "(c) Prepare, publish, and disseminate information, findings, and recommendations regarding the well-being of older individuals.
 "(d) Actively participate and advise the department in the development and preparation of the State Plan on Aging, conduct public hearings on the State Plan on Aging, review and comment on the state plan, and monitor the progress of the plan's implementation.
 "(e) Meet at least six times annually in order to study problems of older individuals and present findings and make recommendations.
 "(f) Hold hearings throughout the state, that may include conducting an annual statewide hearing inviting all departments administering programs affecting seniors, in order to gather information and advise the Governor, Legislature, department, and agencies on all levels of government regarding solutions to problems confronting older individuals and the most effective use of existing resources and available services for individuals.
 "(g) Hire an executive director and, within budgetary limits, such staff as may be necessary for the commission to fulfill its duties.
 "(h) Develop, in cooperation with the department, a method for the selection of delegates to the statewide legislative meeting of senior advocates.
 "(i) Perform other duties as may be required by statute, regulation, or resolution.
 "(j) Meet and consult with the area agency on aging advisory councils in order to exchange information, and assist in training, planning, and development of advocacy skills."
Section 9206 additionally provides:
 "The commission shall render those services that are necessary to implement this chapter pursuant to an agreement entered into with the California Senior Legislature."
CCOA also plays a prominent role in the allocation of money deposited in the California Fund for Senior Citizens and the California Seniors Special Fund. (Rev. Tax Code, §§ 18721,18771-18772.)
We have little doubt that a member of CCOA holds a public office for purposes of the incompatible offices doctrine. The Legislature has specifically designated the position as an office, with a fixed term. (§ 9201.) Each member's tenure is not transient, and incumbents succeed one another. Members have been delegated sovereign functions of the executive branch of state government. (§§9202, 9206.) We believe CCOA members hold "offices" for purposes of the common law rule. (See Dibb v. County of San Diego (1994) 8 Cal.4th 1200, 1212.)
However, the same cannot be said of CSL members. The Legislature's findings and declarations with respect to CSL are set forth in section9300:
 "(a) The Legislature finds and declares that the needs of senior citizens for public programs in health, social services, recreation, transportation, education, housing, cultural services, and other appropriate areas of service can best be assessed by senior citizens.
 "(b) The Legislature also finds and declares that the California Senior Legislature, having been in continuous service since first provided for in 1980, and since its first session in 1981, and having proved its usefulness in providing model legislation for older citizens and advocating for the needs of seniors, shall be established through this chapter and shall operate according to the procedures set forth in this chapter."
Section 9301 specifies the terms of service of CSL members:
 "(a) The California Senior Legislature shall be composed of two houses, the California Senior Senate, composed of 40 members, and the California Senior Assembly, composed of 80 members.
 "(b) Members of the California Senior Legislature shall serve two-year terms."
The manner of selecting CSL members is provided in section9302:
 "The members of the California Senior Legislature shall be elected, in all 33 planning and service areas in California, according to rules developed by the California Senior Legislature in cooperation with the California Association of Area Agencies on Aging and the commission."
Section 9304 describes the "authority" of CSL members:
 "The California Senior Legislature shall have the full authority to define its program and utilize its funds in any way necessary to carry out the duties of this chapter, provided that no such program or activity is in violation of state law or regulation."
In deciding whether members of CSL are "officers," we note that no duties are expressly specified for CSL. Any duties would necessarily be implied from the terms of section 9300 that CSL has "proved its usefulness in providing model legislation for older citizens and advocating for the needs of seniors." In our view, CSL is an advisory body to the Legislature with respect to the formulation of legislation that could aid seniors. As noted at the outset, members of advisory groups are not "officers" for purposes of the common law rule prohibiting the holding of incompatible offices. (83 Ops.Cal.Atty.Gen., supra, at p. 52.)
With respect to the third position, TACC membership, we first observe that community-based services for senior citizens are developed by "area agencies on aging." (§§ 9006,9400-9568.) Section9400 provides:
 "(a) The Legislature hereby declares and recognizes the area agencies on aging to be the local units on aging in California that are supported from an array of sources, including federal funding largely through the federal Older Americans Act ( 42 U.S.C. § 3001, et seq.), state and local government assistance, the private sector, and individual contributions for services.
 "(b) Area agencies on aging shall operate in compliance with the Older Americans Act and applicable regulations.
 "(c) Each area agency on aging shall maintain a professional staff that is supplemented by volunteers, governed by a board of directors or elected officials, and whose activities are reviewed by an advisory council consisting primarily of older individuals from the community.
 "(d) Each area agency on aging shall create a plan that considers available data and population trends, assesses the needs for services provided under this division reflective of the community needs, identifies sources for funding those services, and develops and implements a plan for delivery of those services based on those needs. Each plan shall include developing area home- and community-based systems of care that maintain individuals in their own homes or least restrictive environment, providing better access to these services through information and referral, outreach, and transportation, and advocating for the elderly on local, state, and national levels.
 "(e) Area agencies on aging shall function as the community link at the local level for development of home- and community-based services provided under the department's programs.
 "(f) The area agencies on aging shall implement subdivision (b) of Section 9100 at the local level, with particular emphasis on coordinating with the local systems to enable individuals to live out their lives with maximum independence and dignity in their own homes and communities through the development of comprehensive and coordinated systems of home- and community-based care. Nothing in this division shall preclude local determination and designation service coordinators other than area agencies on aging, for development and implementation of the long-term care integration pilot projects set forth in Article 4.05 (commencing with Section 14139.05) of Chapter 7 of Part 3 of Division 9.
 "(g) In fulfilling their mission, area agencies on aging shall build upon the resources and the commitment unique to each community and shall be guided by a 10-point description of a community-based system that shall do all of the following:
 "(1) Have a visible focal point of contact where anyone can go or call for help, information, or referral on any aging issue.
"(2) Provide a range of service options.
 "(3) Ensure that these options are readily accessible to all older individuals, whether independent, semi-independent, or totally dependent, no matter what their income.
 "(4) Include a commitment of public, private, and voluntary resources committed to supporting the system.
 "(5) Involve collaborative decision-making among public, private, voluntary, religious, and fraternal organizations, as well as older individuals and consumers in the community.
 "(6) Offer special help or targeted resources for the most vulnerable older individuals, those in danger of losing their independence.
 "(7) Provide effective referral from agency to agency to ensure that information or assistance is received, no matter how or where contact is made in the community.
 "(8) Evidence sufficient flexibility to respond with appropriate individualized assistance, especially for the vulnerable older individuals.
 "(9) Have a unique character that is tailored to the specific nature of the community.
 "(10) Be directed by leaders in the community who have the respect, capacity, and authority necessary to convene all interested persons to assess needs, design solutions, track overall success, stimulate change, and plan community responses for the present and for the future."
Area agencies on aging have advisory councils. Section9402 states:
 "The Legislature hereby declares and recognizes each area agency on aging advisory council as a principal advocate body on behalf of older individuals within a planning and service area. Area agency on aging advisory councils shall operate in conformance with applicable federal requirements. The local advisory councils shall meet regularly and provide advice and consultation on issues affecting the provision of services provided locally to older individuals."
Section 9403 "recognizes" TACC membership as follows:
 "To the extent provided for in paragraph (2) of subdivision (a) of Section 18773 of the Revenue and Taxation Code, the Legislature hereby recognizes the Area Agency on Aging Advisory Council of California, comprised of the chairs of the local advisory councils."
Revenue and Taxation Code section 18773, subdivision (a)(2) specifies an allocation of money from the California Seniors Special Fund ". . . for the operational support of the Area Agency on Aging Advisory Council of California (TACC) for its advocacy efforts on behalf of the senior citizens of California."
As its name implies, TACC acts in an advisory capacity. California law provides no specific duties for TACC members that require the exercise of the sovereign powers of the state. TACC is composed of the chairs of 33 advisory groups to provide "advocacy efforts on behalf of the senior citizens of California." While TACC members may succeed one another, they act as advisors and not "officers" for purposes of the incompatible offices doctrine.
Because two of the positions in question do not constitute "offices" for purposes of the common law rule, we conclude that an individual may simultaneously serve as a member of CCOA, CSL, and TACC.
[1] All section references are to the Welfare and Institutions Code unless otherwise indicated.
[2] Prior to 1980, former section 9309 provided with respect to CCOA members:
 "No person, while holding the office of member of the commission or its staff or the director of the department or its staff, shall be a trustee, manager, director or other officer or employee of any agency performing any function supervised by the department or the commission, nor shall any member of the commission hold any other office or employment in the department."
This provision was repealed in 1980 (Stats. 1980, ch. 912, § 7), and the Act currently contains no similar provision.
[3] We are not involved herein with conflict of interest laws that prohibit a public officer or employee from using his or her public position for personal financial gain. (See § 9538; Gov. Code, §§ 1090 et seq., 8920 et seq., 87100
et seq.) These are matters that may arise on a transactional basis.