Filed 4/29/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SHARON E. BROWN,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>PACIFICA FOUNDATION, INC.,<br><br>     Defendant and Appellant. | A152824<br><br>(Alameda County<br>Super. Ct. No. RG17861044) |

## I. INTRODUCTION

Pacifica Foundation, Inc. (Pacifica) is a California non-profit corporation that owns and operates public radio stations across the country, including KPFK in Los Angeles. Sharon Brown was elected to be a "Delegate" of KPFK and subsequently to a position on Pacifica's National Board of Directors. However, Pacifica notified Brown she was ineligible for these board positions because she was a Los Angeles Small Business Commissioner, and Pacifica bylaws bar individuals from serving in board positions while they hold any public office. When Brown refused to acknowledge her disqualification, Pacifica voted to remove her from the KPFK Local Station Board and Pacifica's National Board.[1]

Claiming her removal was instigated by a rival faction of Pacifica's National Board, Brown and two other individuals with similar complaints filed the underlying action for declaratory and injunctive relief. The present appeal is from an order granting Brown a preliminary injunction enjoining Pacifica during the pendency of this litigation

---

[1] In the lower court and on appeal, the parties often use the term "LSB" to refer to a Local Station Board and "PNB" to refer to Pacifica's National Board of Directors.

to restore Brown to her board positions. The trial court found that Brown will likely succeed on the merits of her claim because, as a matter of law, Brown's position on the Small Business Commission is not a public office. We reverse the court's order because it is premised on a false assumption that the term "public office" has but one legal definition.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Background Regarding Pacifica

Pacifica is a non-profit public benefit corporation that operates federally licensed radio broadcasting stations "exclusively for educational purposes" pursuant to formal bylaws (bylaws). According to its bylaws, Pacifica's radio broadcasting operations have been designed to "promote the full distribution of public information; to obtain access to sources of news not commonly brought together in the same medium; and to employ such varied sources in the public presentation of accurate, objective, comprehensive news on all matters vitally affecting the community."

Pacifica has two classes of members: listener-sponsor members, who make at least minimum contributions to a radio station in their area, either through volunteer work or financial support; and staff members, who are employed in paid or unpaid positions at one of five Pacifica radio stations. All members hold voting rights through their affiliation with a radio station. Local station members separately elect Delegates to represent them, and the duties of those Delegates include electing Directors to represent each radio station area on Pacifica's National Board. Pacifica's bylaws call for a 22- or 23-member Board of Directors. A Delegate who has served as a Delegate for at least one year is eligible for election to the office of Director for his or her radio station area, while non-Delegate members may run for positions as an "affiliate" or "at large" Director.

Eligibility requirements for Delegates include that they must be members in good-standing, and they must not simultaneously hold or be a candidate for a public office. This public office ban is incorporated into Article Four, Section 2 of the bylaws, as follows: "[N]o person who holds any elected or appointed public office at any level of government, federal, state or local, or is a candidate for such office shall be eligible for

2

election to the position of Delegate. A Delegate shall be deemed to have resigned the position of Delegate if s/he becomes a candidate for public office or accepts a political appointment during his or her terms as a Delegate. This restriction shall not apply to civil service employment by governmental agencies."

This public office ban is likewise incorporated into eligibility requirements for Directors in Article Five, Section 1, which states: "no person who holds any elected or appointed public office at any level of government—federal, state, or local—or is a candidate for such office, shall be eligible for election to the position of Director. A Director shall be deemed to have resigned the position of Director if s/he becomes a candidate for public office or accepts a political appointment during his or her term as a Director. This restriction shall not apply to civil service employment by governmental agencies."

The public office ban is also incorporated into bylaw provisions governing removal of a Delegate and/or Director. Article Four, Section 9 states: "Any Delegate shall be removed from the position of Delegate, and cease to be a Delegate, upon the occurrence of any of the following: . . . a disqualifying act, e.g. the appointment to an elected political office . . . ." Similarly, Article Five, Section 7 provides that "[c]onsistent with applicable law, any Director shall be removed from the position of Director, and cease to be a Director upon the occurrence of any of the following: . . . a disqualifying act, e.g. candidacy, election or appointment to a political office . . . ."

**B. Brown's Background and Affiliation with Pacifica**

Sharon Brown is an attorney, author and small business owner in the San Fernando Valley. In January 2015, Los Angeles County Supervisor Sheila Kuehl appointed Brown to the position of Commissioner on the Los Angeles Small Business Commission (sometimes referred to as the Commission).

The Commission, which operates pursuant to provisions of the Los Angeles Code of Ordinances, is comprised of 20 voting members and up to 5 alternate members who have demonstrated their commitment to representing their business community. Commissioners are appointed by a member of the Board of Supervisors to serve a three

3

year term, subject to the pleasure of the Board, and may serve no more than two consecutive terms unless a waiver is secured. The Commission is an advisory body to the Director of the Department of Consumer and Business Affairs regarding such matters as "small business contract utilization in the County and small business development in unincorporated areas of the County." In its advisory role, the Commission makes findings and recommendations and reports to the Director and the Board of Supervisors. It conducts business pursuant to formal rules and procedures and is staffed by employees of the Department of Consumer and Business Affairs.

In July 2015, Brown applied to be a Delegate for her local radio station, KPFK in Los Angeles. On the "Cover Sheet" of her nomination packet, Brown provided general contact and demographic information about herself. The Cover Sheet form contained the following statement: "I am an eligible Listener-Sponsor Member in good standing, I am 16 years of age or older. I do not hold an elected or appointed public office at any level of government, nor am I a candidate for such office (this does not include the civil service). I have read and understand the 2015 Pacifica Fair Campaign Provisions." Brown signed her name below this statement, but the following proviso was typed above her signature: "* I am a Commissioner for the County of Los Angeles Small Business Commission." In late 2015, Brown was elected to the KPFK Local Station Board.

On January 7, 2017, Brown was elected by her fellow KPFK Delegates to be one of four KPFK Director representatives to Pacifica's National Board. Less than a week later, a KPFK listener/sponsor member named Tracy Rosenberg sent an e-mail to Brown, with copies to the Chair and Vice-Chair of the KPFK Local Station Board. Rosenberg stated that although Brown had recently been elected as a KPFK Director, she was ineligible to serve as a Delegate or Director while holding her seat as an appointed Commissioner on the Los Angeles County Small Business Commission. Rosenberg closed her e-mail with these remarks: "According to the Pacifica bylaws, Ms. Brown has been ineligible to serve as a delegate on the KPFK local station board for the past 13 months and would be deemed to have resigned at this time. [¶] Ms. Brown would need

4

to formalize her resignation from one of the two positions, either as a KPFK delegate or as an LA County Commissioner."

On January 12, 2017, Jaime Gomez, KPFK's Local Station Board Chair, sent an email to Brown, following up on the Rosenberg e-mail. Gomez stated: "I just received this information [emoji], and wanted to touch bases with you. My understanding is that a previous LSB member . . . was removed because she was serving as someone appointed to a commission. So, please allow me to ask you one or two questions. [¶] • Are you still serving as a Commissioner on the Los Angeles County Small Business Commission? [¶] • And if so, do you plan to continue serving on this Commission? [¶] Your response(s) will assist the LSB in moving forward on this issue." [¶] Thank you."

Brown did not respond to Gomez's email, so he followed up with a formal letter, dated January 19, 2017. Gomez stated that "[a]ccording to Pacifica Bylaws, Article 4, Section 2A, your appointment to the Los Angeles County Small Business commission precludes you from serving on the KPFK Local Station Board/Delegates Assembly." Gomez quoted the pertinent bylaw language and then stated: "Based on my understanding of the bylaws, you were ineligible to run for the KPFK Local Station Board during the 2015 elections. If you have a different view, I would like to hear from you by January 31, 2017. If I do not hear from you by this date, I will deem you as having resigned from the KPFK Local Station Board, and will consider the matter settled. Thank you for your service."

On January 23, 2017, Brown sent an email to Gomez, which stated that she was attaching documents that could be helpful "with committee organization and planning." The attachments included general descriptions of KPFK board committees and templates for creating board documents. Although Brown did not make any reference to the controversy regarding her role on the Small Business Commission, Gomez took this e-mail as an indication that Brown had elected to retain that role and that she was sending Gomez KPFK related material that she would no longer need. Accordingly, he sent an e-mail to the Secretary of Pacifica's National Board, which stated that Brown was no longer a member of the KPFK board. In the e-mail, which was also sent to Brown,

5

Gomez explained that Brown was ineligible to serve because of her appointment to the Small Business Commission and advised there would be an election to fill her vacancy. A few days later, Gomez shared this development with other members of the local and national boards in an e-mail that was also sent to Brown.

On January 31, 2017, Brown sent an email to Gomez. She acknowledged receiving Gomez's January 19 letter, but admonished him to "cease and desist" from using her professional business address for correspondence about her service with Pacifica. Brown then stated: "Note that this is my first and only communication with you regarding this matter. Further, note, that I have no reason to resign and no intention of resigning from the KPFK Local Station Board or the Pacifica National Board (PNB) as I was duly elected by the Listener-Sponsor Members and by the Delegates of KPFK, respectively." Brown further stated that it was her "understanding" that when similar issues came up in the past, others were allowed to retain their board positions, and that "a similar matter has been litigated and the Supreme Court of California ruled that serving in an unpaid, advisory position without rule-making authority does not rise to the level of oversight and authority contemplated in Article 4, Section 2A of the Pacifica Bylaws."

The following week, Gomez sent a follow-up letter to Brown reiterating his determination that she was disqualified from serving as a KPFK Delegate or a Pacifica Director. Gomez advised Brown that he took her January 31 letter as an indication of her intent to appeal his ruling and that he would schedule a "Closed Session" meeting of the KPFK board for March 12, 2017, at which time she would have the opportunity to explain her position and present her challenge. Finally, Gomez advised Brown that if the Board were to overrule his determination regarding Brown's ineligibility, other bylaws could be invoked to remove her as a Delegate and Director, including, specifically, Article Five, Section 7, which states: "Consistent with applicable law, any Director shall be removed from the position of Director, and cease to be a Director . . . (E) upon the 2/3 vote of the Delegates present and voting (but not less than a majority of all the Delegates) of the radio station that elected said Director (excluding the vote of the

6

Director in question) that said Director has exhibited conduct that is adverse to the best interests of the Foundation."

On February 12, 2017, Brown appeared at a KPFK Board meeting and was recognized by the Chair. A motion was then made challenging Gomez's determination that Brown had resigned. The matter was debated and then Gomez's decision was sustained by a vote of 12 to 4, with 3 members abstaining. As noted, Brown's formal appeal was scheduled to be heard at KPFK's March 12 board meeting. The day before that meeting, Brown submitted a packet of information regarding her "improper removal" as a Delegate and Director. Brown also requested that Gomez recuse himself from chairing the hearing and that the matter be heard in an "Open Session" in keeping with public broadcasting guidelines and Pacifica's bylaws.

At the March 12 meeting, the KPFK board attempted to hold a closed session to address Brown's appeal. According to the minutes from the meeting, "[t]he public physically refused to leave for the closed session." A motion to hear the matter in open session was debated and defeated by majority vote. Then there was another failed attempt to clear the public. Brown and another person successfully urged the public to refuse to follow the Chair's instructions to clear the room. Ultimately, the meeting was adjourned after which two individuals "verbally resigned from the board."

The hearing on Brown's appeal was postponed to April 9, 2017. Gomez gave Brown notice of the new date and advised her that an open session hearing was neither required nor appropriate under the circumstances. Brown did not attend the April 9 hearing, although she sent an email to board members which stated: "I object to this and all prior adverse actions, taken personally by you and the Boards, pertaining to my position as a KPFK LSB Member/Delegate and PNB Director. [¶] Please be advised that I have hired legal counsel to pursue this matter."

The minutes from the April 9 KPFK board meeting contain the following summary of the Brown matter: "Chair Jaime Gomez explained that he deemed Sharon Brown resigned because of her appointment to the Los Angeles County Small Business Commission by County Supervisor Sheila Kuehl. This determination that Sharon Brown

7

had effectively resigned was subsequently upheld by the KPFK Local Station Board and the Pacifica National Board. However, and in order to protect our organization from threatened legal action, it was decided by our Governance Committee to recommend a formal vote to remove Sharon Brown as an LSB Member/Delegate and Pacifica National Director, as per Pacifica bylaws Article Five, Section 7(E). Removal of a Director, according to this bylaw, requires a 2/3's vote of Delegates present and voting. Sharon Brown had been provided with appropriate notice, and an attempt was made to telephone Sharon Brown during our closed meeting. A motion to remove Sharon Brown as a member of the KPFK-LSB and Pacifica Director [was] made and passed with a vote of 18 yes, 1 no, 0 abstentions."

### C. The Present Action

On May 19, 2017, Brown and two other individuals, Efia Nwangaza and Adriana Casenave, filed a petition for injunctive and declaratory relief pursuant to Corporations Code section 5617 (section 5617), a provision of the Nonprofit Corporation Law, which authorizes a superior court action to "determine the validity of any election or appointment of any director of any corporation." (§ 5617, subd. (a).) Under this statute, "[t]he court, consistent with the provisions of this part and in conformity with the articles and bylaws to the extent feasible, may determine the person entitled to the office of director or may order a new election to be held or appointment to be made, may determine the validity of the issuance of memberships and the right of persons to vote and may direct such other relief as may be just and proper." (§ 5617, subd. (d).)

Brown and her co-petitioners alleged that Pacifica took improper actions to remove or prevent them from serving in elected board positions. Allegations regarding Brown challenged Pacifica's determination that she is ineligible to serve because she holds a public office. Nwangaza, a resident of South Carolina, alleged she was removed from her position as an Affiliate Director pursuant to an improper vote count. Casenave, a resident of Texas, alleged that a faction of the National Board attempted to remove her as a Director representative of KPFT in Houston, on trumped up charges of inappropriate conduct.

8

According to the petition, the denial of board positions to Brown and Nwangaza and attempts to remove Casenave were all part of a plan by "[t]he majority faction" of Pacifica's National Board to gain "supermajority control" over the corporation in order to implement "substantial and irreversible changes to the organization including the effective dissolution of the Foundation." Petitioners sought declaratory and injunctive relief requiring Pacifica to reinstate Brown and Nwangaza and to cease efforts to remove Casenave.

### D. The Preliminary Injunction

Petitioners applied for a temporary restraining order, which was denied. They also sought a preliminary injunction, for which the trial court issued an order to show cause. Petitioners argued that Pacifica violated its bylaws and California law by removing or threatening to remove them from their board positions, and that if Pacifica's "slight" majority faction was not prevented from summarily changing election results, members would be disenfranchised.

Prior to a September 2017 hearing, the trial court published a tentative ruling to grant a preliminary injunction to Brown but deny it to Nwaganza and Casenave. The tentative ruling was contested by both sides, which led to further briefing and another hearing. On October 26, 2017, the court decided to adhere to its original position, filing a nine-page order that incorporated its tentative ruling and included additional findings (the October 2017 order). Because Pacifica is the only party who filed an appeal from the October 2017 order, we limit our review to the order granting Brown preliminary injunctive relief.

### III. DISCUSSION

### A. Preliminary Injunction Standards

The decision whether to issue a preliminary injunction requires the trial court to " 'evaluate two interrelated factors: (i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of his [or her] claim, and (ii) the balance of harm presented, i.e., the comparative consequences of the issuance and nonissuance of the injunction.' " (*Law School Admission Council, Inc. v. State of California* (2014)

9

222 Cal.App.4th 1265, 1280 (*Law Sch. Admission Council*).) The court's ruling is not an adjudication of ultimate rights, but balances the respective equities of the parties to determine whether " ' " 'pending a trial on the merits, the defendant should or . . . should not be restrained from exercising the right claimed by him [or her].' " ' " (*Ibid.*)

Although the general purpose of this interim measure is to preserve the status quo pending a determination on the merits of the action, the court "also has the power to issue a preliminary injunction that ' " 'mandates an affirmative act that changes the status quo' " ' [citation], but should do so only in those ' " 'extreme cases where the right thereto is clearly established.' " ' " (*Integrated Dynamic Solutions, Inc. v. VitaVet Labs, Inc.* (2016) 6 Cal.App.5th 1178, 1183–1184 (*Integrated Dynamic*).)

Ordinarily, the decision whether to grant a preliminary injunction is reviewed for an abuse of discretion, and factual findings underlying the court's ruling are reviewed for substantial evidence. (*Integrated Dynamic, supra,* 6 Cal.App.5th at pp. 1183–1184.) However, the appellate court will more closely scrutinize an injunction that changes the status quo. (*Ibid.*) Moreover, when the determinative factor in deciding whether to grant a preliminary injunction is a question of law, that determination is subject to de novo review. (*Law Sch. Admission Council, supra,* 222 Cal.App.4th at pp. 1280–1281; see also *Jamison v. Department of Transportation* (2016) 4 Cal.App.5th 356, 361.)

## B. Brown's Likelihood of Success on the Merits

In this case, the trial court found that Brown demonstrated a likelihood of succeeding on the merits because her role as a Small Business Commissioner does not constitute a public office that would disqualify her from a board position under the Pacifica bylaws.

According to the October 2017 order, the parties agreed that Pacifica's bylaws should be interpreted in accordance with principles of contract interpretation. There is precedent for that approach. (See *Scott v. Lee* (1962) 208 Cal.App.2d 12, 15; *Smith v. Kern County Medical Assn* (1942) 19 Cal.2d 263, 270–271.) However, the trial court did not employ contract principles to interpret the pertinent bylaw language. Instead, the court concluded that (1) the California Supreme Court has determined that the term

10

"public office" has only one acceptable definition, and (2) the Los Angeles Small Business Commission does not fit that definition as a matter of law. As we will explain, these conclusions are legal errors.

According to the trial court, the Supreme Court has identified two essential elements of a public office: "(1) that it is a continuing, permanent position defined by law and passed from person to person, and not occasional or specific to one individual, and (2) that its occupant exercises a public function, and wields some part of the public entity's judicial, executive, or legislative power." The trial court derived this definition from two cases, *Spreckels v. Graham* (1924) 194 Cal. 516, 530 (*Spreckels*) and *Dibb v. County of San Diego* (1994) 8 Cal.4th 1200, 1212 (*Dibb*).)

In *Spreckels, supra*, 194 Cal. 516, petitioners alleged they were candidates for "presidential electors" who were denied their right under section 1188 of the California Political Code to have their names included on an upcoming election ballot. The Supreme Court rejected this claim because it found that a presidential elector is not a public office under section 1188. The court based this finding on its assessment of the legislature's likely intent when it used the phrase "a candidate for any public office" in section 1188. (*Id*. at p. 530.)

In reaching its holding, the *Spreckels* court considered possible definitions of the term "public office," but it explicitly rejected the notion that only one such definition exists. As the court explained: "It is difficult, perhaps impossible, to frame a definition of public office or public officer which will be sufficiently accurate, both as to its inclusion and its exclusion, to meet the requirements of all cases. But two elements now seem to be almost universally regarded as essential thereto. First, a tenure of office 'which is not transient, occasional or incidental,' but is of such a nature that the office itself is an entity in which incumbents succeed one another and which does not cease to exist with the termination of incumbency, and, second, the delegation to the officer of some portion of the sovereign functions of government, either legislative, executive, or judicial." (*Id*. at p. 530.) The *Spreckels* court then found that a presidential elector does not satisfy these elements, but it explicitly refused to hold that these elements are

11

essential to a public office.  It also found that the fact that presidential electors do not fit this two-part definition does not mean a fortiori that presidential electors are not public officers, explaining that there "are approved definitions sufficiently broad to include them as such," and that "[a] definition sufficiently accurate to meet the requirements of one case may be found inadequate to another."  Ultimately, though, the court concluded that when the legislature used the phrase, " 'a candidate for any public office,' in section 1188" it did not intend for those provisions to apply to presidential electors.  (*Id*. at pp. 530–531.)

*Dibb, supra*, 8 Cal.App.4th 1200, was a tax payer challenge to a county charter provision that established the Citizens Law Enforcement Review Board (or CLERB) to investigate public complaints against the county sheriff and probation departments.  Attempting to demonstrate that the CLERB was not authorized, the plaintiff argued that its members were not " 'county officers' " within the meaning of Article XI, section 4 of the California Constitution because they were not public officers under the two-part test discussed in *Spreckels*.  (*Id*. at pp. 1211–1213.)  Rejecting this argument, the *Dibb* court found:  "[A] public officer (or a county officer) is one who, inter alia, is delegated a public duty to exercise a part of the governmental functions of the political unit for which he, as agent, is acting.  That test is plainly met here."  (*Id*. at p. 1212, italics omitted.)

Neither of these cases purports to establish an all-purpose definition of the term public office or public officer.  Indeed, in *Spreckels* the Supreme Court expressly declined to do so.  It declined again in *In re M.M*. (2012) 54 Cal.4th 530 (*M.M*.).  The issue there was whether a public school security officer is a public officer within the meaning of Penal Code section 148, subd. (a)(1).  The *M.M.* court stated:  "The term 'public officer' found in section 148(a)(1) is ambiguous on its face.  Indeed, this court long ago observed that '[i]t is difficult, perhaps impossible, to frame a definition of . . . public officer which will be sufficiently accurate, both as to its inclusion and its exclusion, to meet the requirements of all cases.' "  (*Id*. at p. 536 quoting *Spreckels, supra*, 194 Cal. at p. 530.)  Because the meaning of the term "public office" as it was used in section 148, subd. (a)(1) could not be "gleaned from the phrase itself," the *M.M*.

12

court examined statutory history to determine the Legislature's intent and concluded ultimately that the intent of the Legislature was to define "public officer" for purposes of this statute to include "public officials and employees who perform law enforcement related duties in connection with their office or employment." (*Id*. at p. 536.)

The *M.M*. court also discussed the two-part *Spreckels* test, which it characterized as the common law definition of a public officer. (*M.M., supra*, 54 Cal.4th at pp. 541– 544.) The court acknowledged that all officers who assist law enforcement agencies do not fall within this common law definition. However, it concluded that the Legislature did not purport to incorporate the common law definition into Penal Code section 148 or "to require that one hold a 'public office' in order to qualify as a 'public officer' under that section." (*Id*. at p. 543.) Moreover, the court found, "the term 'public officer,' as used in Penal Code section 148(a)(1) and elsewhere in the Penal Code is not intended to be limited to incumbents elected or appointed to a fixed term of public office." (*Id*. at p. 543.) Thus, the court concluded that decisions "which draw upon the common law definitions of 'public officer' and 'public office,' do not control the meaning of the term 'public officer' as used in section 148(a)(1)." (*Id*. at p. 544.)

Read together, these cases compel the conclusion that California does not recognize a single legal definition of the term "public office." (See also *People v. Superior Court (Sahlolbei)* (2017) 3 Cal.5th 230, 236–237 [statute prohibiting public officers from making contracts in which they have a financial interest has long applied to a city's outside counsel who does not fall within the *Spreckels* definition of a public officer.]; *Neville v. County of Sonoma* (2012) 206 Cal.App.4th 61, 79–81 [under pertinent statutes, county commissioner of agriculture and sealer qualified as both an employee and public officer.].) The term "public office" is ambiguous on its face and its meaning depends on issues of context and intent, neither of which the court considered here notwithstanding the fact that the parties submitted extrinsic evidence regarding the purpose of the pertinent bylaw provisions.

The October 2017 order granting Brown a preliminary injunction states that the parties "agree that the relevant Bylaw's use of the term 'public office' implicitly

incorporates the California Supreme Court's definition of that term." We find no evidence of such an agreement. Regardless, there is no such definition. The common law test may be a useful tool, but it is by no means definitive. The trial court's contrary conclusion was an error of law.

Moreover, the trial court committed a separate error by materially altering the common law definition. As noted, that definition consists of two elements: (1) a fixed and permanent tenure of office " 'in which incumbents succeed one another' "; and (2) " 'delegation to the officer of some portion of the sovereign functions of government, either legislative, executive, or judicial.' " (*Dibb, supra*, 8 Cal.4th at p. 1212, italics omitted, quoting *Spreckels, supra*, 194 Cal. at p. 530.) Here, the trial court found that the undisputed facts demonstrate that the Los Angeles Small Business Commission satisfies element (1) but does not satisfy element (2).

The court's analysis of the first prong of the common law test is not disputed by either party on appeal. As the court found, the Small Business Commission is not an informal body but a "permanent and continuing" entity, with membership and operations defined by law, which conducts public meeting and other business subject to the Brown Act. Thus, the first prong of the common law test is clearly met.[2]

As for element (2), the common law definition requires a delegation of a "public duty" (*Dibb, supra*, 8 Cal.4th at p. 1212), or "some portion of the sovereign functions of government" (*Spreckels, supra*, 194 Cal. at p. 530). Here, as the trial court explicitly found, the Los Angeles Board of Supervisors has delegated tasks to the Small Business Commission that it would otherwise perform itself, and the Commission "clearly serves a function that aids the Board of Supervisors." Despite these findings, the trial court

---

[2] In the trial court, Brown requested judicial notice of court records from *Burnstein v. Pacifica Foundation*, No. RG11-562056 (*Burnstein*), a 2011 case in which the court found that Pacifica acted improperly by disqualifying an individual from serving as a Director on the ground that he was an informal advisor to the Oakland Mayor. The trial court took judicial notice of *Burnstein*, but it concluded that case was distinguishable under the first prong of the " 'public office' test."

concluded that element (2) cannot be satisfied as a matter of law because one fact is dispositive—the Commission is a "purely advisory" body.

The court acknowledged there is a "genuinely debatable question" whether a formally constituted advisory committee constitutes a public office but then provided two reasons for concluding that it never does. First, an advisory body cannot promulgate rules or regulations or make decisions with legal force. Second, the duties of an advisory body like the Commission are not "qualitatively different" from the role of hired staff of a public officer. According to the court, the "only obvious, principled distinction" between a member of a legislative body, who indisputably holds a public office, and a member of hired staff, who performs fact finding and advisory functions but is not a public officer, is that the former exercises the power of a governmental entity. By this "standard," the court concluded, Small Business Commissioners are analogous to salaried staff who support a legislative body but do not hold a public office.

We conclude that the trial court's wholesale exclusion of advisory commissions from the definition of a public office was legal error. The fact that a body serves an advisory function does not preclude it from being a public office, as demonstrated by *Dibb, supra,* 8 Cal.4th 1200, where the Supreme Court found that the citizens review board created by the county was a public office under the common law definition. In its discussion, the court paraphrased pertinent provisions of the ordinance that created the CLERB: "The CLERB is designed to 'advise' and make 'recommendations' to the board of supervisors, the sheriff, and the chief probation officer concerning complaints against peace officers employed by the county. The code specifies that the CLERB 'will be advisory only and shall not have authority to manage or operate the Sheriff's Department or the Probation Department or direct the activities of any County officers or employees . . . .The [CLERB] shall not decide policies or impose discipline against officers or employees of the County.' " (*Dibb, supra*, at pp. 1204–1205.) Despite the fact that the CLERB is an advisory body, the Supreme Court found that its members hold a public office under the common law definition.

15

Moreover, the trial court's conclusion that there is no meaningful distinction between the Small Business Commission and hired staff of a legislative body is equally flawed. In contrast to the Commission, hired staff of legislative bodies do not satisfy the first element of the common law definition of a public office. In its May 2017 order, the trial court distinguished the *Burnstein* case (see fn. 2) because it involved an individual whose role as an informal advisor to the Oakland Mayor did not satisfy the first element of the common law definition of a public officer, whereas Pacifica "demonstrated at length . . . that the Commission on which Brown serves is a permanent entity created by the Board of Supervisors, whose membership and operations are defined by law, and whose meetings have published public agendas subject to the Brown Act, with public comment periods, and that the office Brown currently occupies is permanent and continuing." The trial court failed to recognize, however, that this same evidence distinguishes the Commission from the hired staff in its hypothetical example, who do not hold a tenured office created by law.

Because of the court's legal errors, it failed to assess the significance of undisputed evidence regarding the intent behind the bylaw provisions precluding a Delegate or Director from holding a public office. "In order to determine initially whether the terms of any written instrument are clear, definite and free from ambiguity the court must examine the instrument in the light of the circumstances surroundings its execution so as to ascertain what the parties meant by the words used." (*Estate of Russell* (1968) 69 Cal.2d 200, 208–209, italics omitted; see also Civ. Code, § 1647 ["A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates"].) In this case, Pacifica produced a declaration from Carol Spooner, the former Chair of the Pacifica National Bylaws Committee, who explained that the public office ban was intended to apply broadly to "any elected or appointed position that was political in nature [as opposed to a civil service job], and that would involve loyalties to any political incumbent or administration—such as political appointment to a commission, committee, advisory board, task force, for example." This declaration and other evidence produced by Pacifica indicates strongly that the term

16

public office as used in the Pacifica bylaws was intended to include a position on the Los Angeles County Small Business Commission.

On appeal, Brown maintains that even if her position on the Commission constitutes a public office under the bylaws, her removal was not authorized for two other reasons. First, she argues, the bylaws also state that local and national "elections supervisors" are responsible for reviewing candidate materials to ensure they meet eligibility requirements, and in this case local elections officials approved Brown's candidacies notwithstanding the fact that she disclosed she was a Small Business Commissioner. The trial court properly rejected this argument. Pacifica's bylaws do not state or intimate that eligibility requirements can only be enforced by elections supervisors. Moreover, Brown did not allege facts or produce evidence to show that Pacifica was estopped from enforcing the public office ban against her.

Brown's second theory, presented for the first time on appeal, is that a careful reading of the bylaws compels the conclusion that, assuming she held a public office when she was elected to a board position, that fact would not be a ground justifying her removal. According to this argument, a sitting Delegate or Director who becomes a candidate for or accepts a public office may be deemed to have resigned or may be removed from a board position. However, no provision explicitly authorizes the forced removal of a Delegate or Director who already held a public office at the time s/he was elected to a board position. Even if this argument had been made below, it would fail. " 'When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is "reasonably susceptible" to the interpretation urged by the party. If it is not, the case is over.' " (*Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1448.) Here, the bylaw provisions pertaining to the public office ban are not reasonably susceptible to Brown's interpretation, which would give her an end-run around explicit eligibility requirements for Delegates and Directors.

The crux of the trial court's finding that Brown has a strong chance of success on the merits of her petition is that her advisory position on the Los Angeles Small Business Commission does not constitute a public office as a matter of law. For all the reasons

17

outlined above, this finding must be reversed.  Our conclusion makes it unnecessary for us to address other material issues raised in the appellate briefs.

## IV.  DISPOSITION

The October 2017 order is reversed to the extent it grants Brown a preliminary injunction and this case is remanded for further proceedings consistent with this opinion.

_____
TUCHER, J.

WE CONCUR:


_____
POLLAK, P. J.


_____
BROWN, J.


*Brown v. Pacifica Foundation*  (A152824)

19

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Hon. Julia Spain |
| Counsel for Appellant: | Ford Greene, III |
| Counsel for Respondent: | Harold P. Smith |