Filed 3/26/26

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| INDEPENDENT OFFICE OF LAW ENFORCEMENT REVIEW AND OUTREACH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>SONOMA COUNTY SHERIFF'S OFFICE et al.,<br><br>    Defendants and Respondents. | A171763<br><br>(Sonoma County<br>Super. Ct. No. 24CV04208) |

    The Independent Office of Law Enforcement Review and Outreach (Independent Office or IOLERO) was established by Sonoma County (County) to serve as an oversight entity over the County Sheriff's Office (Sheriff). After receiving a whistleblower complaint, the Independent Office served subpoenas on certain Sheriff employees. The Sheriff employees did not comply with the subpoenas.

    The Independent Office brought an action to enforce the subpoenas pursuant to a state law addressing the subpoena power of county sheriff

---

[*] Pursuant to California Rules of Court, rules 8.1100, 8.1105(b), and 8.1110, this opinion is certified for publication with the exception of part II.D. of the Discussion.

1

oversight entities.  (Gov. Code, § 25303.7.)[1]  The Sheriff and the Sonoma County Deputy Sheriffs' Association (Union) argued that the Independent Office lacked the authority to issue subpoenas in the investigation of a whistleblower complaint.  The trial court agreed with the Sheriff and Union (collectively, Respondents) and found against the Independent Office.  The Independent Office appeals.

The parties first dispute whether the trial court's order is appealable. We agree with the Independent Office that it is.  On the merits, the parties dispute whether the Independent Office has the power to issue subpoenas in the investigation of whistleblower complaints.  We conclude that section 25303.7 grants subpoena authority to sheriff oversight entities within the meaning of that statute.  We further conclude that the Independent Office is a sheriff oversight entity for purposes of section 25303.7, and that it therefore has the authority to issue the challenged subpoenas.  We reverse the trial court's order finding otherwise.[2]

BACKGROUND[3]

In 2016, the Board enacted an ordinance governing the newly created Independent Office.  (Sonoma County Ord. No. 6174, adding former art. XXVII, § 2-392 et seq. to Sonoma County Code [adopted Sept. 13, 2016;

---

[1] All undesignated statutory references are to the Government Code.

[2] In the unpublished portion of the opinion, we reject two other claims raised by Respondents.

[3] We grant the Independent Office's April 10, 2025, request that we take judicial notice of a brief filed in a writ proceeding involving the County's board of supervisors (Board) and the Sheriff, Board reports from July and August of 2020, and the ballot pamphlet for Measure P.  We have considered and rejected the arguments opposing this request advanced by the Sheriff and the Union.

2

repealed by Ord. No. 6333, § 1, adopted by Sonoma County Local Ballot Measure P, Gen. Elec. (Nov. 3, 2020)].)  The 2016 ordinance granted the Independent Office various powers and duties, including to "[r]eceive and review citizen complaints, and forward them to the Sheriff-Coroner for review and investigation," and to "[a]dvise if investigations appear incomplete or otherwise deficient and recommend further review as deemed necessary." (Sonoma County Code, former § 2-394, subd. (b)(1) & (4).)  The 2016 ordinance expressly provided that the Independent Office was *not* authorized to perform certain acts, including "[c]onduct its own investigation of complaints against law enforcement personnel" and "[c]ompel by subpoena the production of any documents or the attendance and testimony of any witnesses."  (Sonoma County Code, former § 2-394, subd. (c)(1) & (3).)

In August 2020, the Board adopted a resolution to put an initiative on the November ballot that would repeal and replace the 2016 ordinance governing the Independent Office (Measure P).  The new ordinance submitted to the voters in Measure P would grant the Independent Office various powers, including to "[r]eview, audit and analyze administrative and public complaint investigations in mutual coordination and cooperation with the sheriff-coroner"; "[a]ct as a receiving and investigative agency for whistleblower complaints involving the sheriff-coroner"; and "[i]ndependently subpoena records or testimony, as the director deems appropriate, to complete an adequate investigation."  (Sonoma County Code, § 2-394, subd. (b)(2), (3), & (5)(ix).)  Measure P was approved by the voters and the new ordinance took effect.

Subsequently, the Union and another County peace officer association filed unfair practice complaints with the Public Employment Relations Board (PERB) over Measure P.  (*County of Sonoma v. Public Employment Relations*

*Board* (2022) 80 Cal.App.5th 167, 173, 176.) As relevant here, PERB found the County violated the Meyers-Milias-Brown Act (§ 3500 et seq.) by failing to bargain over its decision to place on the ballot many of the provisions enacted by Measure P, including those granting the Independent Office authority to conduct independent investigations and issue subpoenas. (*County of Sonoma*, at p. 177.) PERB declared these and certain other provisions adopted by Measure P to be void and unenforceable, and the County sought review of PERB's order. (*Id.* at pp. 177, 174.) With respect to the independent investigation and subpoena provisions, the Court of Appeal remanded the matter to PERB for additional analysis. (*Id.* at pp. 180–185.) The Court of Appeal also held that PERB's remedy of invalidating provisions of Measure P was in excess of its authority, but that PERB had the authority on remand "to declare void the Board's *resolution* placing on the ballot the Measure P provisions" found illegal by PERB. (*Id.* at pp. 191–192.)

While the appeal was pending, the County and the Union met and conferred, and in June 2022, days before the Court of Appeal's opinion issued, the County and the Union executed a letter of agreement (Agreement).[4] The Agreement states that it followed "the parties' meet and confer sessions pursuant to [the Meyers-Milias-Brown Act]" regarding the Independent Office's "authority to review, audit and analyze administrative and public complaint investigations of bargaining unit members employed by the Sheriff's Office." The Agreement includes detailed provisions about the Independent Office's procedures and authority.

On remand from the Court of Appeal's decision, PERB found the dispute had not been mooted by the Agreement because it did not resolve the

---

[4] The Agreement was amended in May 2023 in aspects not material to the issues on appeal.

underlying issue of whether the County had a duty to meet and confer before placing Measure P on the ballot. PERB conducted the additional analysis directed by the Court of Appeal and again found the independent investigation and subpoena provisions of Measure P, among others, to be in violation of the County's duty to meet and confer with the Union. With respect to the appropriate remedy, PERB declined to invalidate the Board's resolution placing the violative provisions of Measure P on the ballot, finding "no reason to order such a remedy here" because, "[a]s the parties concede, the June 2022 [Agreement] resolved all meet-and-confer issues arising out of the Measure P amendments we have found could not be adopted or implemented without bargaining. While the [Agreement] contain[s] numerous relevant provisions, none are more important tha[n] those allowing IOLERO to conduct independent investigations, thereby permitting the parallel investigatory path at the core of the reasons multiple Measure P provisions fell within the scope of representation. It would not effectuate the [Meyers-Milias-Brown Act's] purposes to disturb that agreement."

In April 2024, the Independent Office served subpoenas on two Sheriff's employees seeking certain documents and testimony material to the Independent Office's investigation of a whistleblower complaint it had received. The Sheriff and the Union both informed the Independent Office of their position that the Independent Office lacked subpoena power in connection with whistleblower complaints.

In July 2024, the Independent Office filed the underlying action pursuant to section 25303.7, seeking an order to show cause directing the subpoenaed parties to "explain why they should not be ordered to comply with the subpoenas," and further asking the court to "[i]nitiate contempt proceedings" against the subpoenaed parties. The Sheriff and the Union both

5

filed oppositions.  After briefing and argument, the trial court denied the requested relief.

## DISCUSSION

I.    *Appealability*

The parties dispute the appealability of the trial court's order.  We find the order appealable.

Under section 25303.7, if a subpoena served by a sheriff oversight entity as provided in that statute is not complied with, the oversight entity "may certify the facts to the superior court" and the court "shall thereupon issue an order directing the person to appear before the court and show cause why they should not be ordered to comply with the subpoena."  (§ 25303.7, subd. (b)(3)(A)–(B).)  The statute further provides, "The same proceedings shall be had, the same penalties imposed, and the person charged may purge themself of the contempt in the same way as in a case of a person who has committed a contempt in the trial of a civil action before a superior court."  (*Id.*, subd. (b)(3)(C).)

As an initial matter, all parties agree the trial court's order denying the Independent Office's requested relief is a final judgment.  We also agree.  It is immaterial that the order was not captioned as a "judgment."  " ' "It is not the form of the decree but the substance and effect of the adjudication which is determinative.  As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory." ' "  (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5,

6

italics omitted (*Dana Point*).) The sole matter before the trial court was whether the Independent Office's subpoenas were enforceable; after deciding that question, no further judicial action was necessary.[5]

The Independent Office argues the order is an appealable final judgment. (Code Civ. Proc., § 904.1, subd. (a)(1).) Respondents contend the order is an exception to the general rule of appealability for final judgments because it is a contempt judgment. (See *McCord v. Smith* (2020) 51 Cal.App.5th 358, 367 ["Orders in contempt cases are final and conclusive (Code Civ. Proc., § 1222) and are not appealable (*id*., § 904.1, subd. (a)(1))"]; Code Civ. Proc., § 904.1, subd. (a)(1) [judgments are appealable "other than . . . a judgment of contempt that is made final and conclusive by Section 1222"].)

As Respondents note, the trial court's order denied the relief sought in the Independent Office's petition, including that the court "[i]nitiate contempt proceedings." But under section 25303.7, the first step taken by the court is to determine whether the subpoenaed parties should "be ordered to comply with the subpoena" (§ 25303.7, subd. (b)(3)(B))—relief that was also sought by the Independent Office and denied in the trial court's order. Thus, under the enforcement procedure set forth in section 25303.7, the immediate issue before the court was whether to order the subpoenaed parties to comply, not whether to hold them in contempt.

Indeed, Respondents have cited no authority, and we have found none, suggesting that parties subpoenaed outside of a judicial proceeding could be

---

[5] The appealed-from order leaves in place a case management conference "for calendar control," but the only outstanding issue appears to be an anticipated motion for attorney fees. (See *Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1316 ["A judgment is final and appealable if all that remains is a determination of costs and interest"].)

found in contempt absent a court order directing compliance and disobedience of that court order. Contempt of court includes "[d]isobedience of any lawful judgment, order, or process *of the court*." (Code Civ. Proc., § 1209, subd. (a)(5), italics added.) Although "[d]isobedience of a subpoena duly served" also constitutes contempt, it only does so when "in respect to a court of justice, or proceedings therein." (*Id.*, subd. (a)(10), (a).) The Independent Office's subpoenas were not served in respect to court proceedings.

This conclusion is supported by *Dana Point*, *supra*, 51 Cal.4th 1, which considered whether an order compelling compliance with a legislative subpoena (a subpoena issued by a city) was final despite the possibility of future contempt proceedings. *Dana Point* quotes with approval a prior case also involving legislative subpoenas: " 'The statutory scheme at hand provides for an original proceeding in the superior court, initiated by the mayor's report to the judge, which results in an order directing the respondent to comply with a city's subpoena. Indeed, the compliance order is tantamount to a superior court judgment in mandamus, which, with limited statutory exceptions, is appealable. [Citations.] Whether the matter is properly characterized as an "action" [citation] or a "special proceeding" [citation], it is a final determination of the rights of the parties. It is final because it leaves nothing for further determination between the parties except the fact of compliance or noncompliance with its terms. [Citation.]' [Citation.] [¶] . . . Indeed, . . . because a contempt judgment is not appealable, but reviewable only by a writ which may be summarily denied, 'review of the underlying order [compelling compliance] can reliably be had only if that order is appealable.' " (*Id.* at pp. 9–10.) *Dana Point* thus supports the conclusion that a party seeking to enforce an administrative or legislative subpoena must first obtain a court order compelling compliance—which is an

8

appealable order—and only then, if successful and if the subpoenaed party continues to refuse to comply, can the subpoenaed party be found in contempt.

In sum, despite language in the trial court's order declining the Independent Office's request to initiate contempt proceedings, the order was substantively one declining to order the subpoenaed parties to comply with the Independent Office's subpoenas. The order is therefore appealable.

II.    *Subpoena Power*

The parties dispute whether the Independent Office has the authority to issue subpoenas in connection with its investigation of a whistleblower complaint under section 25303.7 and/or Measure P, and whether, if so, the Agreement nonetheless governs the matter.[6] We review these legal issues de novo.[7] (See *Childhelp, Inc. v. City of Los Angeles* (2023) 91 Cal.App.5th 224, 235.)

---

[6] The Union argues that the Independent Office impermissibly raises new arguments on appeal. In the trial court, as here, the Independent Office relied on section 25303.7, Measure P, and the Agreement. To the extent any of the arguments raised on appeal can be characterized as new (an issue we do not decide), "[o]n appeal, a party may raise a new issue of law based on undisputed facts." (*C9 Ventures v. SVC-West, L.P.* (2012) 202 Cal.App.4th 1483, 1492.)

[7] Respondents contend that our review is limited to determining whether the trial court had jurisdiction. The argument is based on their claim that the appealed-from order is a contempt judgment, which we have rejected in part I, *ante*. (See *Board of Supervisors v. Superior Court* (1995) 33 Cal.App.4th 1724, 1736 ["[T]o review an adjudication of contempt, ' "the sole question before us is one of jurisdiction of the trial court to render the judgment under review" ' "].)

A.    *Subpoena Power Pursuant to Section 25303.7*

We begin by considering whether, as argued by the Independent Office and amici curiae,[8] section 25303.7 grants subpoena power to all sheriff oversight entities within the meaning of that statute.

" 'Our fundamental task in construing' . . . any legislative enactment[] 'is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citation.]  We begin as always with the statute's actual words, the 'most reliable indicator' of legislative intent, 'assigning them their usual and ordinary meanings, and construing them in context.  If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs.  On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction.' " (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837–838.)

Section 25303.7 provides that "[a] county *may* create a sheriff oversight board" and "[a] county . . . *may* establish an office of the inspector general." (§ 25303.7, subds. (a)(1) & (c)(1), italics added.)  The statute further provides that "[t]he chair of the sheriff oversight board *shall* issue a subpoena or subpoena duces tecum in accordance with Sections 1985 to 1985.4, inclusive, of the Code of Civil Procedure whenever the board deems it necessary or important to examine the following: [¶] (A) Any person as a witness upon any subject matter within the jurisdiction of the board. [¶] (B) Any officer of the county in relation to the discharge of their official duties on behalf of the

---

[8] A joint amici curiae brief was filed by American Civil Liberties Union of Northern California, California Coalition for Sheriff Oversight, and Law Enforcement Action Partnership.

sheriff's department. [¶] (C) Any books, papers, or documents in the possession of or under the control of a person or officer relating to the affairs of the sheriff's department," and that "[t]he inspector general *shall* have the independent authority to issue a subpoena or subpoena duces tecum subject to the procedure" set forth with respect to the sheriff oversight board. (*Id.,* subds. (b)(1) & (c)(2), italics added.)

The statute uses the term "may" when setting forth a county's ability to create the identified sheriff oversight entities, but uses the term "shall" when describing the entities' subpoena powers. "Under 'well-settled principle[s] of statutory construction,' we 'ordinarily' construe the word 'may' as permissive and the word 'shall' as mandatory, 'particularly' when a single statute uses both terms. [Citation.] In other words, '[w]hen the Legislature has, as here, used both "shall" and "may" in close proximity in a particular context, we may fairly infer the Legislature intended mandatory and discretionary meanings, respectively.' " (*Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542 (*Tarrant*).) Thus, the plain language of the statute indicates that counties have the discretion to create sheriff oversight entities but, once created, section 25303.7 grants those entities subpoena power. However, "in determining whether the Legislature intended a statute to be mandatory or permissive, use in the statute of 'may' or 'shall' is merely indicative, not dispositive or conclusive. [Citation.] Therefore, we may properly consider other indicia of legislative intent, including relevant legislative history." (*Tarrant*, at p. 542.)

The language of section 25303.7 stands in contrast to that of statutes governing other county entities that clearly provide these entities only have subpoena power if the county so provides. For example, a statute governing civil service commissions provides that "*[a] county may by ordinance provide*

11

that its civil service commission or equivalent body shall have the power to issue subpoenas and subpoenas duces tecum . . . ." (§ 31110.2, italics added.) Similarly, a statute addressing county hearings provides that "the county hearing officer *may be authorized by ordinance or resolution* . . . to issue subpoenas . . . ." (§ 27721, italics added.) "Where statutes involving similar issues contain language demonstrating the Legislature knows how to express its intent, ' "the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes." ' " (*County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 825.) Thus, these statutes demonstrate that the Legislature knows how to grant counties the discretion to determine when to confer subpoena power on a county entity, and the omission of such language from section 25303.7 indicates the Legislature did not intend to allow this discretion here.

The Legislative Counsel's Digest provides further support for this construction by stating the bill "would *authorize a county* to establish a sheriff oversight board" and "would *authorize a county* . . . to establish an office of the inspector general," but "would *authorize the chair of the oversight board and the inspector general* to issue a subpoena or subpoena duces tecum when deemed necessary to investigate a matter within their jurisdiction." (Legis. Counsel's Dig., Assem. Bill No. 1185 (2019–2020 Reg. Sess.), italics added (Legis. Counsel's Dig.).) "The Legislative Counsel's summaries 'are prepared to assist the Legislature in its consideration of pending legislation.' [Citation.] Although the Legislative Counsel's summaries are not binding [citation], they are entitled to great weight. [Citation.] 'It is reasonable to presume that the Legislature [acted] with the intent and meaning expressed

12

in the Legislative Counsel's digest.' " (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1169–1170.)

We acknowledge that, in other parts of the legislative history, there is equivocal language. Specifically, some committee reports state that the bill "provides statutory authority to general law counties that wish to establish sheriff oversight boards and inspector general offices, and *give general law counties the ability to equip those entities with subpoena power*." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1185 (2019–2020 Reg. Sess.) as amended July 28, 2020, p. 6, italics added (Sen. 3d Reading Analysis); accord, Assem. Com. on Public Safety, Rep. on Assem. Bill No. 1185 (2019–2020 Reg. Sess.) as introduced Feb. 21, 2019, p. 5 (Assem. Public Safety Rep.).) But the committee reports also include language indicating that subpoena power is conferred by the statute itself, for example, stating the bill "*[a]uthorizes a county to create* a sheriff oversight board and an inspector general's office and further *authorizes those entities to issue a subpoena* whenever they deem it necessary or important." (Assem. Floor Analysis, 3d reading analysis of Assem. Bill No. 1185 (2019–2020 Reg. Sess.) as introduced Feb. 21, 2019, p. 1, italics added; see also Sen. 3d Reading Analysis, at pp. 3–4 [bill provides "*a county may* create a sheriff oversight board" and "*a county . . . may* establish an office of the inspector general," and further provides "*the chair of the sheriff oversight board shall* issue a subpoena" and "*the inspector general shall* have the independent authority to issue subpoenas" (italics added)].) We therefore do not find the former statements in the legislative reports to be dispositive of the issue, particularly in light of the statutory language discussed above.

Respondents argue *Dibb v. County of San Diego* (1994) 8 Cal.4th 1200 (*Dibb*), issued prior to the enactment of section 25303.7, weighs in favor of

13

construing section 25303.7 to grant counties the discretion to confer subpoena power on sheriff oversight entities. *Dibb* involved a challenge to a charter county's creation of a citizens review board with oversight over the county sheriff, and to the county's grant of subpoena power to the board. (*Id.* at p. 1204.) The court first held that boards of supervisors in all counties have the statutory authority to supervise county officers, including the sheriff, and to establish citizen commissions to assist them in that function. (*Id.* at pp. 1209–1210, citing §§ 25303 ["The board of supervisors shall supervise the official conduct of all county officers"] and 31000.1 ["The board of supervisors may appoint commissions or committees of citizens to study problems of general or special interest to the board and to make reports and recommendations to the board"].)

Turning to the subpoena power question, the court first observed that, "although the Legislature has granted the power to issue subpoenas to various county entities," including boards of supervisors, no such statute then existed as to sheriff oversight entities. (*Dibb*, *supra*, 8 Cal.4th at p. 1210.) The challengers argued the statutes granting subpoena power to other county entities indicated "the Legislature has preempted the field of 'entities entitled to issue subpoenas.'" (*Ibid.*) The Supreme Court found it "unnecessary to decide" the preemption question because, "even assuming the Legislature intends to do so with respect to noncharter counties, it may not do so with respect to" charter counties, for reasons not relevant here.[9] (*Dibb*, at pp. 1210–1211.)

---

[9] The County is a general law county. (See California State Association of Counties, County Structure <https://www.counties.org/counties/county-structure/> [as of Mar. 26, 2026].)

Respondents contend that, because the sheriff oversight entity in *Dibb* was granted subpoena power by the county rather than by the Legislature, this must be the system the Legislature intended in enacting section 25303.7. We disagree.  First, there is no indication in *Dibb* that the Legislature lacks the authority to directly confer subpoena power on sheriff oversight entities and instead is limited to granting counties the discretion to do so.  Second, the discussion of *Dibb* in the legislative history of section 25303.7 is ambiguous—indeed, the same language was relied on by parties on both sides of the issue.  After discussing the facts and holdings of *Dibb,* committee reports stated, "[T]his bill clarifies that general law counties have the statutory authority to create sheriff-specific oversight boards and inspector general offices that both have statutory subpoena power."  (Sen. 3d Reading Analysis, at p. 5; accord, Assem. Public Safety Rep., at p. 4.)  It is not clear whether this statement indicates an intent to grant counties the discretion to both create sheriff oversight entities and to determine whether these entities have subpoena power, or whether it indicates an intent to allow counties the discretion to create such entities which, if created, will have subpoena power. *Dibb* was clearly a part of the legal landscape on which section 25303.7 was enacted, however, we are not persuaded that it weighs in favor of a construction of the statute contrary to the plain language.

The Sheriff argues that "[i]t defies logic and law to argue that a county creating an oversight board/inspector general is now ***required*** to confer that entity with broad subpoena powers."  We disagree.  The legislative history indicates a strong legislative concern with ensuring adequate oversight of sheriffs.  Committee reports quote the bill author as stating, " 'Honest oversight of law enforcement is absolutely necessary if we want to rebuild trust between officers and the communities they serve.  AB 1185 will make it

15

clear that Sheriff Oversight Boards *have the authority to properly review the actions of Sheriffs*, provide transparency to citizens and create opportunities for real change.' " (Assem. Conc. in Sen. Amends. to Assem. Bill No. 1185 (2019–2020 Reg. Sess.) as amended July 28, 2020, p. 1, italics added (Assem. Concurrence); accord, Sen. Com. on Public Safety, Rep. on Assem. Bill No. 1185 (2019–2020 Reg. Sess.) as introduced Feb. 21, 2019, p. 4.) The reports also quote the argument of bill proponents that " '[m]eaningful independent oversight and monitoring of sheriffs' departments increases government accountability and transparency, enhances public safety, and builds community trust in law enforcement. *Such oversight must have the authority and independence necessary to conduct credible and thorough investigations.*' " (Assem. Concurrence, at p. 1, italics added; accord, Sen. 3d Reading Analysis, at p. 7.) Thus, the reports indicate a legislative concern with ensuring meaningful oversight of sheriff's departments, and a determination that subpoena power is a necessary component of this oversight. (See also *Dibb*, *supra*, 8 Cal.4th at pp. 1216–1217 ["the power to issue subpoenas is reasonably necessary to the full accomplishment of the legitimate goals of the legislation" creating a sheriff oversight entity].)

Significantly, county boards of supervisors have oversight authority over sheriffs and also have statutory subpoena power. (§ 25170; *Dibb*, *supra*, 8 Cal.4th at p. 1210.) Thus, a board of supervisors can issue subpoenas in exercising its own oversight authority over a sheriff. The Legislature could reasonably conclude that, if a county elects to create a sheriff oversight entity to assist the board of supervisors, that entity must possess subpoena power so that the oversight will be meaningful. This legislative intent is bolstered by the fact that section 25303.7 confers subpoena power using language strikingly similar to that of section 25170, the statute granting subpoena

16

powers to county boards of supervisors. Section 25170 provides, "Whenever the board of supervisors *deems it necessary or important to examine any person as a witness upon any subject or matter within the jurisdiction of the board*, or to examine *any officer of the county in relation to the discharge of his official duties* as to the receipt or disposition by him of any money, or concerning the possession or disbursement by him of any property belonging to the county, or to use, inspect, or examine *any books,* account, voucher, *or document in the possession or under the control of the person or officer relating to the affairs* or interests of the county, the chairman of the board *shall issue a subp[o]ena . . . .*" (Italics added.) Section 25303.7, subdivision (b)(1) provides, "The chair of the sheriff oversight board *shall issue a subpoena . . .* whenever the board *deems it necessary or important to examine* the following: [¶] (A) *Any person as a witness upon any subject matter within the jurisdiction of the board.* [¶] (B) *Any officer of the county in relation to the discharge of their official duties* on behalf of the sheriff's department. [¶] (C) *Any books,* papers, *or documents in the possession of or under the control of a person or officer relating to the affairs* of the sheriff's department." (Italics added.) The parallel language strongly suggests the Legislature intended to confer on sheriff oversight entities the full scope of subpoena power held by boards of supervisors with respect to oversight of county sheriffs, thus ensuring that whichever entity was conducting oversight of the sheriff would have adequate tools to do so.

The Union argues that, if section 25303.7 grants subpoena power directly to sheriff oversight entities, a county would be unable to "target[] or limit[] the powers of the entities it creates" such that "if a county created a body charged only with investigating traffic stops, . . . that county could not limit that entity's subpoena powers to cases involving traffic stops." We need

17

not and do not decide whether a sheriff oversight entity with limited authority—i.e., over only certain aspects of the sheriff's department—is granted subpoena power only to the extent of that authority under section 25303.7.[10]  We assume, without deciding, that if a county created a sheriff oversight entity that did not have jurisdiction over whistleblower complaints, section 25303.7 would not confer upon that entity subpoena power with respect to whistleblower complaints.  Such a case is not before us, as Measure P indisputably includes whistleblower complaints within the Independent Office's jurisdiction.  (Sonoma County Code, § 2-394, subd. (b)(3) ["IOLERO's powers and duties" include acting "as a receiving and investigative agency for whistleblower complaints involving the sheriff-coroner"].)

In sum, we conclude that, if a county elects to create a sheriff oversight entity within the meaning of section 25303.7, that statute grants the oversight entity subpoena powers.

B.    *"Inspector General"*

The parties also dispute whether the Independent Office is a sheriff oversight entity—specifically, an "inspector general"—within the meaning of section 25303.7 and is therefore granted subpoena authority pursuant to that statute.  We agree with the Independent Office that it is.

Section 25303.7 provides, "A county, through action of the board of supervisors or vote by county residents, may establish an office of the

---

[10] We note that the statute confers the power to subpoena "[a]ny person as a witness upon *any subject matter within the jurisdiction of the board.*"  (§ 25303.7, subd. (b)(1)(A), italics added; see also Legis. Counsel's Dig. ["The bill would authorize the chair of the oversight board and the inspector general to issue a subpoena or subpoena duces tecum when deemed necessary to investigate *a matter within their jurisdiction*" (italics added)].)

inspector general, appointed by the board of supervisors, to assist the board of supervisors with its duties required pursuant to Section 25303[11] that relate to the sheriff." (§ 25303.7, subd. (c)(1).) Measure P was enacted by a vote of County residents, provides that the Independent Office's director is appointed by the County's board of supervisors, and states the Independent Office was created by the Board "pursuant to its authority under California law, including Government Code sections 31000.1 and 25303" and "[a]s part of the board of supervisor's duty to supervise the official conduct of the sheriff under state law." (Sonoma County Code, §§ 2-392, subds. (d)–(e), 2-393, subd. (a).)

In substance, the Independent Office meets the requirements and serves the function of a section 25303.7 inspector general. To find the Independent Office not covered by the statute simply because it is named the "Independent Office of Law Enforcement Review and Outreach" instead of the "office of the inspector general" would be to elevate form over substance in a manner that would undermine the purpose of the statute to ensure that sheriff oversight entities have subpoena power enabling them to perform meaningful oversight. (See Civ. Code, § 3528 ["The law respects form less than substance"]; *County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 320 ["A general principle of statutory construction is that courts do not place form over substance where doing so defeats the objective of a statute"].)[12]

---

[11] Section 25303 provides, "The board of supervisors shall supervise the official conduct of all county officers . . . ."

[12] The Union argues that a county could choose not to confer subpoena authority on a sheriff oversight entity by simply "refrain[ing] from referring to them as an inspector general." We see no indication in the statutory language or legislative history that the Legislature intended to allow such an end-run around the provisions of section 25303.7. Had the Legislature

Respondents also claim that section 25303.7 cannot grant the Independent Office subpoena powers because the statute did not take effect until after Measure P took effect. The bill adding section 25303.7 was enacted on September 30, 2020 (Stats. 2020, ch. 342, § 1), before the voters approved Measure P on November 3, 2020. However, section 25303.7 did not take effect until after the effective date of Measure P.[13]

Respondents argue that finding section 25303.7 grants the Independent Office subpoena power would constitute an impermissible retroactive application of the statute. We disagree. " '[A] statute is retroactive if it substantially changes the legal effect of past events.' " (*Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1136.) " 'A statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment.' " (*San Gabriel Valley Water Co. v. Hartford Accident & Indemnity Co.* (2000) 82 Cal.App.4th 1230, 1238.) To be sure, section 25303.7 could not provide the authority for any subpoenas issued by the Independent Office prior to January 1, 2021, as this would constitute a change in the legal effect of a past event. But the challenged subpoenas were issued after section 25303.7's effective date. That the Independent Office itself was in existence prior to this effective date does not render the application of the statute to these subpoenas retroactive. (See *San Gabriel Valley*, at pp. 1236–1239 [application of statute limiting fees for an insured's independent counsel to a policy entered into before the effective

_____

wanted to give counties the ability to create sheriff oversight entities without subpoena power, it could have done so.

[13] Although the record does not reveal the effective date of Measure P, all parties represent it was before January 1, 2021, the effective date of section 25303.7.

date was not retroactive where the litigation necessitating independent counsel did not arise until after the effective date].)[14]

In sum, the Independent Office is a sheriff oversight entity for purposes of section 25303.7 and is accordingly granted subpoena power, pursuant to the terms of that statute, for subpoenas issued after section 25303.7's effective date.

C.    *The Agreement*

In the alternative, Respondents argue that the Agreement entered into by the Union and the County does not permit the Independent Office to issue subpoenas in connection with the investigation of a whistleblower complaint, and constitutes a partial waiver by the County of the Independent Office's section 25303.7 subpoena power.  In other words, Respondents argue, subpoena power is conferred by section 25303.7 only in the absence of a labor agreement to the contrary.  We disagree.

Respondents rely on language providing that a public employer's authority relating to its employees "is governed by the terms of the applicable MOU [memorandum of understanding], rather than by any general statutory provision that applies in the absence of an MOU."  (*Professional Engineers in California Government v. Schwarzenegger* (2010) 50 Cal.4th 989, 1041 (*Professional Engineers*).)[15]  But *Professional Engineers* involved *state* employee organizations, which are governed by a different statutory scheme

---

[14] The Sheriff also argues application of section 25303.7 would retroactively impair contractual rights under the Agreement.  To the contrary, section 25303.7 was in effect long before the Agreement was executed.

[15] A second case relied on by the Sheriff was ordered by the Supreme Court not to be published and is therefore not properly cited.  (Cal. Rules of Court, rules 8.1105(e)(2) & 8.1115(a).)

21

than local public employee organizations.  (Compare §§ 3500–3511 [the Meyers-Milias-Brown Act governing local public employee organizations] with §§ 3512–3524 [the Ralph C. Dills Act governing state employee organizations].)  The statutory scheme governing state employee organizations expressly provides that when certain enumerated statutes "are in conflict with the provisions of a memorandum of understanding, the memorandum of understanding shall be controlling without further legislative action."  (§ 3517.6, subd. (a)(1).)  As explained in *Professional Engineers,* pursuant to this statute, "the terms and conditions embodied in an MOU supersede most of the general statutory provisions that govern the terms and conditions of state employment in the absence of an MOU," including the terms and conditions at issue in that case.  (*Professional Engineers*, at p. 1040.)

No comparable provision is present in the Meyers-Milias-Brown Act governing local public employee organizations.  (See *Professional Engineers*, *supra*, 50 Cal.4th at p. 1018 [Dills Act provision stands "in contrast to most other collective bargaining statutes"].)  If the Legislature had wanted to give counties the discretion to enter into labor agreements addressing whether a sheriff oversight entity has full subpoena power, limited subpoena power, or no subpoena power, it could have done so.  Respondents cite no authority, and we have found none, that a county can divest a county agency of authority conferred on it by state statute, by means of a labor agreement or otherwise.  (See Cal. Const., art. XI, § 7 ["A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws*" (italics added)]; cf. *Bagley v. City of Manhattan Beach* (1976) 18 Cal.3d 22, 24 ["When the Legislature has made clear its intent that one public body or official is to exercise a specified discretionary

power, the power is in the nature of a public trust and may not be exercised by others in the absence of statutory authorization"]; *Costa Mesa City Employees' Assn. v. City of Costa Mesa* (2012) 209 Cal.App.4th 298, 310 ["whether enacting ordinances or entering into contracts, cities are required to act in conformity with state law and are powerless to take measures that conflict with the general laws of California"].)

Accordingly, we conclude that any conflicting provisions in the Agreement do not impact the subpoena power granted to the Independent Office by section 25303.7.[16]

---

[16] The Union complains that this outcome will "conflict with the final decision of PERB, despite there being no timely appeal." The PERB proceeding and this appeal involve distinct issues: PERB did not decide the construction or application of section 25303.7, and we do not decide the obligation to meet and confer. Even assuming there was some conflict—an issue we need not and do not decide—the Union does not provide argument or authority discussing how such a conflict impacts our analysis.

Relatedly, Respondents argue generally that it is unjust that the County agreed to be bound by the Agreement and relied on it in the PERB proceedings, but now the Independent Office—a County entity—argues section 25303.7 grants it subpoena powers in whistleblower complaints regardless of any contrary provision in the Agreement. However, Respondents have not contended we should preclude the Independent Office from making this argument, much less articulated and analyzed a specific equitable doctrine that could support such a contention. In any event, the Agreement contains no provision definitively stating the Independent Office lacks authority to issue subpoenas in whistleblower cases. Absent such a clear provision in the Agreement, any equitable argument on this issue that Respondents might have raised would likely be unavailing.

D.    *Remaining Issues*

1.    *Jurisdiction Over the Sheriff Individually*

The Sheriff argues the Independent Office lacks jurisdiction to investigate alleged wrongdoing by the sheriff personally.[17]  The Sheriff first relies on *Essick v. County of Sonoma* (2022) 81 Cal.App.5th 941 (*Essick*).  The relevant issue in *Essick* was whether a county is a sheriff's employer.  (*Id.* at p. 951.)  In considering this issue, *Essick* reasoned that a county board of supervisors lacks "disciplinary power over the county sheriff."  (*Id.* at p. 952.)  The Sheriff argues the lack of disciplinary power renders any investigation into the sheriff "utterly pointless."

We disagree.  As *Essick* explained, even though a county board of supervisors cannot discipline a sheriff, it still has "oversight authority . . . over other county officers.  (Gov. Code, § 25303.)  A central role of the Board of Supervisors, like any other legislative body, is to investigate the conduct of executive officials and thereby shine a light on matters that the voters of the County may wish to know."  (*Essick*, *supra*, 81 Cal.App.5th at p. 953; see also *Dibb*, *supra*, 8 Cal.4th at p. 1210 ["We conclude that under section 25303, the board of supervisors has a statutory duty to supervise the conduct of all county officers"].)  Thus, *Essick* does not establish that the Independent Office lacks jurisdiction to investigate the sheriff personally, or that any such investigation would be "pointless."

The Sheriff also relies on Measure P, pointing to its definition of " 'sheriff-coroner' " as "the Sonoma County Office of the Sheriff-Coroner," and

---

[17] It is unclear whether the whistleblower complaint does in fact implicate the sheriff personally.  The contention therefore appears unripe.  However, as the trial court ruled on the issue and both sides have briefed it on appeal, we will resolve it as a matter of judicial efficiency.

24

its provision that the Independent Office can investigate "whistleblower complaints involving the sheriff-coroner." (Sonoma County Code, §§ 2-392, subd. (d)(1), 2-394, subd. (b)(3).) The Sheriff argues the Independent Office's authority over whistleblower complaints "cannot be read to apply both to the Sheriff individually and to the Office as a whole interchangeably." We again disagree. Measure P expressly references section 25303, which provides for a county board of supervisors' oversight authority over county officers. (Sonoma County Code, § 2-392, subd. (d) [stating the Board established the Independent Office "pursuant to its authority under California law, including Government Code sections 31000.1 and 25303"].) Thus, Measure P's reference to "the Sonoma County Office of the Sheriff-Coroner" is most reasonably understood to encompass both the sheriff individually and the office as a whole.

### 2. *Penal Code Section 832.7*

The Sheriff also argues that compliance with the subpoenas would require it to violate state laws protecting peace officer personnel records. (See Pen. Code, § 832.7.) It is undisputed that the subpoenas seek in part personnel records protected by this statute.

We need not decide whether, as the Independent Office argues, disclosure of these records would not violate the statute under the version in effect at the time the subpoenas issued. During the pendency of this appeal, a newly enacted statute amended both section 25303.7 and Penal Code section 832.7 to provide that sheriff oversight entities under section 25303.7 are authorized to access peace officer personnel records. (Stats. 2025, ch. 383, §§ 1–2, eff. Jan. 1, 2026.) As particularly relevant here, the amendment added subdivision (c)(3) to section 25303.7, providing, "The inspector general shall have access to the personnel records of peace officers and custodial

25

officers required for the performance of the inspector general's oversight duties.  The inspector general shall maintain the confidentiality of these records consistent with Section 832.7 of the Penal Code."  (Stats. 2025, ch. 383, § 1.)

## DISPOSITION

The order is reversed and remanded with directions to the trial court to enter a new order directing the subpoenaed parties to comply with the subpoenas.  The Independent Office is awarded its costs on appeal.

SIMONS, J.

We concur.

JACKSON, P. J.
CHOU, J.

**Independent Office of Law Enforcement Review and Outreach v. Sonoma County Sheriff's Office et al. (A171763)**

| | |
|---|---|
| Trial Court: | Superior Court of California, County of Sonoma |
| Trial Judge: | Hon. Bradford J. DeMeo |
| Counsel: | Renne Public Law Group, Jonathan V. Holtzman, Amy S. Ackerman, Ryan McGinley-Stempel, Geoffrey Spellberg, Imran M. Dar and Mauricio Grande for Plaintiff and Appellant. |
| | Allyssa Villanueva for American Civil Liberties Union of Northern California, California Coalition for Sheriff Oversight, and Law Enforcement Action Partnership as Amici Curiae on behalf of Plaintiff and Appellant. |
| | Jones Mayer, Denise Lynch Rocawich and James R. Touchstone for Defendants and Respondents Sonoma County Sheriff's Office and Sheriff Eddie Engram. |
| | Rains Lucia Stern St. Phalle & Silver, Rockne A. Lucia, Jr., and Jonathan R. Murphy for Defendant and Respondent Sonoma County Deputy Sheriffs' Association. |